## WATERS–PIERCE OIL COMPANY *v.* TEXAS.

ERROR TO THE COURT OF CIVIL APPEALS FOR THE THIRD SUPREME JUDICIAL DISTRICT OF TEXAS.

No. 97. Argued January 8, 9, 1900. — Decided March 19, 1900.

It is well settled that a State has the power to impose such conditions as it pleases upon foreign corporations seeking to do business within it.

The statute of Texas of March 30, 1890, prohibiting foreign corporations, which violated the provisions of that act, from doing any business within the State imposed conditions which it was within the power of the State to impose; and this statute was not repealed by the act of April 30, 1895, c. 83.

THE Waters-Pierce Oil Company is a private corporation incorporated under the laws of Missouri, and its principal offices are situated in St. Louis.

It was incorporated to deal in naval stores, and to deal in and compound petroleum and other oils and their products, and to buy and sell the same in Missouri and other States. Its capital stock was originally one hundred thousand dollars, but was subsequently increased to four hundred thousand dollars.

On the 6th day of July, 1889, it filed in the office of the secretary of state of Texas, in accordance with the requirements of law, a certified copy of its articles of incorporation, and secured a permit to transact business in the State for the term of ten years.

By virtue of the permit the company engaged in business in the State, and while so engaged, it is claimed, violated the statutes of the State against illegal combinations in restraint of

Statement of the Case.

competition in trade, (copies of the statutes are inserted in the margin,)[1] and thereby incurred a forfeiture of its permit to do. business in the State.

---

[1] SEC. 1. Be it enacted by the Legislature of the State of Texas, That a trust is a combination of capital, skill or acts by two or more persons, firms, corporations or associations of persons, or of either two or more of them for either, any or all of the following purposes: First—To create or carry out restrictions in trade.   Second—To limit or reduce the production, or increase or reduce the price of merchandise or commodities.   Third—To prevent competition in manufacture, making, transportation, sale or purchase of merchandise, produce or commodities.   Fourth—To fix at any standard or figure, whereby its price to the public shall be in any manner controlled or established, any article or commodity of merchandise, produce or commerce intended for sale, use or consumption in this State. Fifth—To make or enter into, or execute or carry out any contract, obligation or agreement of any kind or description by which they shall bind or have bound themselves not to sell, dispose of or transport any article or commodity, or article of trade, use, merchandise, commerce or consumption below a common standard figure, or by which they shall agree in any manner to keep the price of such article, commodity or transportation at a fixed or graduated figure, or by which they shall in any manner establish or settle the price of any article or commodity or transportation between them or themselves or others to preclude a free and unrestricted competition among themselves or others in the sale or transportation of any such article or commodity, or by which they shall agree to pool, combine or unite any interest they may have in connection with the sale or transportation of any such article or commodity that its price might in any manner be affected.

SEC. 2. That any corporation holding a charter under the laws of the State of Texas which shall violate any of the provisions of this act shall thereby forfeit its charter and franchise, and its corporate existence shall cease and determine.

SEC. 3. For a violation of any of the provisions of this act by any corporation mentioned herein it shall be the duty of the attorney general or district or county attorney, or either of them, upon his own motion, and without leave or order of any court or judge, to institute suit or *quo warranto* proceedings in Travis County, at Austin, or at the county seat of any county in the State, where such corporation exists, does business or may have a domicile, for the forfeiture of its charter rights and franchise, and the dissolution of its corporate existence.

SEC. 4. Every foreign corporation violating any of the provisions of this act is hereby denied the right and prohibited from doing any business within this State, and it shall be the duty of the attorney general to enforce this provision by injunction or other proper proceedings in the district court of Travis County, in the name of the State of Texas.

.  This suit is brought to enforce such forfeiture, and was tried in the district court of Travis County, Texas, before the court

---

SEC. 5. That the provisions of chapter 48, General Laws of this State, approved July 9, 1879, to prescribe the remedy and regulate the proceedings by *quo warranto*, etc., shall, except in so far as they may conflict herewith, govern and control the proceedings when instituted to forfeit any charter under this act.

SEC. 6. Any violation of either or all of the provisions of this act shall be and is hereby declared a conspiracy against trade, and any person who may be or may become engaged in any such conspiracy, or take part therein, or aid or advise in its commission, or who shall, as principal, manager, director, agent, servant or employé, or in any other capacity, knowingly carry out any of the stipulations, purposes, prices, rates or orders thereunder, or in pursuance thereof, shall be punished by fine not less than fifty dollars nor more than five thousand dollars, and by imprisonment in the penitentiary not less than one nor more than ten years, or by either such fine or imprisonment. Each day during a violation of this provision shall constitute a separate offense.

SEC. 7. In any indictment for an offense named in this act, it is sufficient to state the purposes or effects of the trust or combination, and that the accused was a member of, acted with or in pursuance of it, without giving its name or description, or how, when or where it was created.

SEC. 8. In prosecutions under this act it shall be sufficient to prove that a trust or combination as defined herein exists, and that the defendant belonged to it or acted for or in connection with it, without proving all the members belonging to it, or proving or producing any article of agreement or any written instrument on which it may have been based, or that it was evidenced by any written instrument at all. The character of the trust or combination alleged may be established by proof of its general reputation as such.

SEC. 9. Persons out of the State may commit and be liable to indictment and conviction for committing any of the offenses enumerated in this act, which do not in their commission necessarily require a personal presence in this State, the object being to reach and punish all persons offending against its provisions whether within or without the State.

SEC. 10. Each and every firm, person, corporation or association of persons who shall in any manner violate any of the provisions of this act, shall for each and every day that such violation shall be committed or continued forfeit and pay the sum of fifty dollars, which may be recovered in the name of the State of Texas in any county where the offense is committed, or where either of the offenders reside, or in Travis County, and it shall be the duty of the attorney general or the district or the county attorney to prosecute for and recover the same.

SEC. 11. That any contract or agreement in violation of the provisions of this act shall be absolutely void and not enforceable either in law or equity.

and a jury. A verdict was rendered against the company, upon which a judgment was duly entered. The judgment was affirmed by the Court of Civil Appeals, (19 Texas Civ. App. Rep. 1,) and this writ of error was sued out in due course.

---

SEC. 12. That the provisions hereof shall be held cumulative of each other and of all other laws in any way affecting them now in force in this State.

SEC. 13. The provisions of this act shall not apply to agricultural products or live stock while in the hands of the producer or raiser.

Approved March 30, 1889. Acts of 1889, p. 141, c. 177.

### The Act of 1895.

Chapter 83.—[H. B. No. 404.] An act to define trusts, provide for penalties and punishment of corporations, persons, firms and associations of persons connect-.*c.* with them, and to promote free competition in the State of Texas, and to repeal all laws and parts of laws in conflict with this act.

SEC. 1. Be it enacted by the Legislature of the State of Texas, That an act entitled " An act to define trusts and to provide for penalties and punishment of corporations, persons, firms and associations of persons connected with them, and to promote free competition in the State of Texas," approved March 30, 1889, be so amended as to hereafter read as follows:

SEC. 1. That a trust is a combination of capital, skill or acts by two or more persons, firms, corporations or associations of persons, or either two or more of them, for either, any or all of the following purposes:

1. To create or carry out restrictions in trade, (or commerce, or aids to commerce, or to create or carry out restrictions in the full and free pursuit of any business authorized or permitted by the laws of this State.)

2. To increase or reduce the price of merchandise, produce or commodities.

3. To prevent competition in manufacture, making, transportation, sale or purchase of merchandise, produce or commodities, or to prevent competition in aids to commerce.

4. To fix at any standard or figure, whereby its price to the public shall be in any manner controlled or established, any article or commodity of merchandise, produce or commerce intended for sale, use or consumption in this State.

5. To make or enter into or execute or carry out any contract, obligation or agreement of any kind or description by which they shall bind or have bound themselves not to sell, dispose of or transport any article or commodity, or article of trade, use, merchandise, commerce or consumption below a common standard figure, or by which they shall agree in any manner to keep the price of such article, commodity or transportation at a fixed or graded figure, or by which they shall in any manner establish or settle the price of any article or commodity or transportation between them or themselves and others to preclude a free and unrestricted competition among themselves or others in the sale or transportation of any such article

The pleadings are very voluminous, alleging the grounds of action and the grounds of defence, with much elaboration and many repetitions.

---

or commodity, or by which they shall agree to pool, combine or unite any interest they may have in connection with the sale or transportation of any such article or commodity that its price might in any manner be affected.

SEC. 2. That any corporation holding a charter under the laws of the State of Texas which shall violate any of the provisions of this act shall thereby forfeit its charter and franchise, and its corporate existence shall cease and determine.

SEC. 3. For a violation of any of the provisions of this act by any corporation mentioned herein it shall be the duty of the attorney general or district or county attorney, or either of them, upon his own motion and without leave or order of any court or judge, to institute suit or *quo warranto* proceedings in Travis County, at Austin, or at the county seat of any county in the State where such corporation exists, does business or may have a domicile, for the forfeiture of its charter rights and franchise and the dissolution of its corporate existence.

SEC. 4. Every foreign corporation violating any of the provisions of this act is hereby denied the right and prohibited from doing any business within this State, and it shall be the duty of the attorney general to enforce this provision by injunction or other proper proceedings in the district court of Travis County, in the name of the State of Texas.

SEC. 5. That the provisions of chapter 48, General Laws of this State, approved July 9, 1879, to prescribe the remedy and regulate the proceedings by *quo warranto*, etc., shall, except in so far as they may conflict herewith, govern and control the proceedings when instituted to forfeit any charter under this act.

SEC. 6. If any person shall be or may become engaged in any combination of capital, skill or acts by two or more persons, firms, corporations or associations of persons, or of either two or more of them, for either, any or all of the following purposes:

1. To create or carry out restrictions in trade or commerce or aids to commerce, or to create or carry out restrictions in the full and free pursuit of any business authorized or permitted by the laws of this State.

2. To increase or reduce the price of merchandise, produce or commodities.

3. To prevent competition in manufacture, making, transportation, sale or purchase of merchandise, produce or commodities, or to prevent competition in aids to commerce.

4. To fix at any standard or figure whereby its price to the public shall be in any manner controlled or established any article or commodity of merchandise, produce or commerce intended for sale, use or consumption in this State.

The basis of the action is an agreement which is set out in full in the complaint, made on the second day of January, 1882,

---

5. To make or enter into or execute or carry out any contract, obligation or agreement of any kind or description, by which they shall bind or have bound themselves not to sell, dispose of or transport any article or commodity, or article of trade, use, merchandise, commerce or consumption, below a common standard figure, or by which they shall agree in any manner to keep the price of such article, commodity or transportation at a fixed or graduated figure, or by which they shall in any manner establish or settle the price of any article or commodity or transportation between them or themselves and others to preclude a free and unrestricted competition among themselves and others in the sale or transportation of any such article or commodity, or by which they shall agree to pool, combine or unite any interest they may have in connection with the sale or transportation of any such article or commodity that its prices may in any manner be affected, or aid or advise in the creation or carrying out of any such combination, or who shall as principal, manager, director, agent, servant or employé, or in any other capacity, knowingly carry out any of the stipulations, purposes, prices, rates, directions, conditions or orders of such combinations, shall be punished by fine of not less than fifty nor more than five thousand dollars, and by imprisonment in the penitentiary not less than one nor more than ten years, or by either such fine or imprisonment.  Each day during a violation of this provision shall constitute a separate offense.

SEC. 7. In any indictment for an offense named in this act it is sufficient to state the effects or purposes of the trust or combination, and that the accused was a member of, acted with or in pursuance of it, without giving its name or description, or how, when or where it was created.

SEC. 8. In prosecutions under this act it shall be sufficient to prove that a trust or combination as defined herein exists, and that the defendant belonged to it or acted for or in connection with it, without proving all the members belonging to it, or proving or producing any article of agreement or any written instrument on which it may have been based, or that it was evidenced by any written instrument at all.  The character of the trust or combination alleged may be established by proof of its general reputation as such.

SEC. 9. Persons out of the State may commit and be liable to indictment and conviction for committing any of the offenses enumerated in this act, which do not in their commission necessarily require a personal presence in this State, the object being to reach and punish all persons offending against its provisions, whether within or without the State.

SEC. 10. Each and every firm, person, corporation or association of persons who shall in any manner violate any of the provisions of this act shall for each and every day that such violation shall be committed or continued forfeit and pay the sum of fifty dollars, which may be recovered in the name of the State of Texas in any county where the offense is committed, or

between a great many firms and partnerships, individuals and corporations, owning and controlling a large amount of the money and capital invested in the production of petroleum and its products, and in their shipment and sale.

The parties to the agreement embraced three classes : (1) certain partnerships and corporations, of the number of eleven; (2) certain individuals, of the number of forty-four, who are enumerated ; and (3) a portion of the stockholders and members of other corporations and limited partnerships, twenty-five being enumerated, one of which was the Waters-Pierce Oil Company. Other individuals, partnerships and corporations could after-

---

where either of the offenders reside, or in Travis County, and it shall be the duty of the attorney general or the district or county attorney to prosecute for and recover the same.

SEC. 11. That any contract or agreement in violation of the provisions of this act shall be absolutely void and not enforceable either in law or equity.

SEC. 12. That the provisions hereof shall be held cumulative of each other and of all other laws in any way affecting them now in force in this State; provided, this act shall not be held to apply to live stock and agricultural products in the hands of the producer or raiser, nor shall it be understood or construed to prevent the organization of laborers for the purpose of maintaining any standard of wages.

SEC. 13. That nothing in this act shall be held or construed to affect or destroy any rights which may have accrued, or to affect the right of the State to recover penalties, or to affect the right of the State to forfeit charters of domestic corporations and prohibit foreign corporations from doing business in this State, or affect the right of the State to maintain prosecutions for violations thereof, under any law of this State relating to trusts, for acts heretofore done.

SEC. 14. Any court, officer or tribunal having jurisdiction of the offense defined in this act, or any district or county attorney or grand jury, may subpœna persons and compel their attendance as witnesses to testify as to the violation of any of the provisions of the foregoing sections. Any person so summoned and examined shall not be liable to prosecution for any violation of said sections about which he may testify fully and without reservation.

SEC. 15. All laws or parts of laws in conflict with this act are hereby repealed.

SEC. 16. Whereas, the people of this State are without an adequate remedy against trusts, therefore an emergency and imperative public necessity exists requiring that the constitutional rule which requires that all bills shall be read on three several days, be suspended, and it is so enacted.

Approved, April 30, 1895.

wards join upon the request of the trustees provided for by the agreement.

It was mutually agreed that a corporation should be formed in Ohio, New York, Pennsylvania and New Jersey, or any existing corporation could be used, to mine, manufacture, refine and deal in petroleum and all its products and all the materials used in such business, and transact other business collateral thereto.

To the several corporations thus organized all the business, rights and stock of the parties to the agreement were to be transferred, and trust certificates issued in consideration thereof.

It is averred that the object of the parties in entering into said agreement and trust was to control and monopolize the petroleum industry in the United States and the several States thereof, and the business of manufacturing, refining, selling and transporting petroleum and its products, refined, illuminating and lubricating oils, and that they intended to and did create, make and effect a combination of their capital, skill and acts for such purposes and for the following purposes, to wit:

" 1st. To create and carry out restrictions in trade in petroleum and its products, refined, illuminating and lubricating oil, in the United States, and in the domestic trade of the States thereof.

" 2d. To increase the price of petroleum and its products, same being commercial commodities and of prime necessity to the people.

" 3d. To prevent competition in the manufacture, sale and purchase of petroleum and its products.

" 4th. To fix at a standard figure the price of petroleum and its products, whereby the price of the same to the public shall be controlled and established, petroleum and its products being commodities of merchandise, intended for use and sale in the State of Texas as well as other States.

" 5th. For the purpose of agreeing, obligating and binding themselves not to sell, dispose of or transport petroleum and its said products below a common standard figure, and to keep the price of petroleum and its products at a fixed or graded figure, and establish and settle the price of petroleum and its products

between themselves and others, and to preclude a free and unrestricted competition among themselves and others in the sale of petroleum and its products, and for the purpose of pooling, combining and uniting any interest they should and did have in connection with the sale of petroleum and its products, that the prices of same might be affected."

That the trustees provided for in said agreement proceeded to execute it, and are still executing it, and for such purpose have divided the markets of the United States in various subdivisions, and one of them is composed of Southwestern Missouri, Arkansas, Texas, Indian Territory, Oklahoma Territory and a part of Louisiana.

That the means employed to effect the purpose of the agreement is to reduce prices below what is reasonable in order to destroy competition, and when it is destroyed raise them again above the market price. A member of the trust is indemnified against loss by the combined power and wealth of all of its parties.

That the Waters-Pierce Oil Company has become a party to said agreement through the control that the trustees acquired by a transfer of stock of the oil company to them, and that the company has taken no corporate action against the transfer of such stock or such control, but has acquiesced in both, and, " through its directors, officers and agents conforms its corporate action to the policy fixed by said nine trustees, . . . and pursues . . .. and executes the purposes and objects of said trust agreement above set out in this State."

That in pursuance of the policy of said agreement it confines its business in the subdivision aforesaid, does not invade or transact business in any other ; that no other party to the agreement transacts business in the territory allotted to and accepted by the Waters-Pierce Oil Company, and the latter adopts and pursues the methods of driving out and overcoming competition in the sale of oils that are adopted and pursued by the other members in the territory allotted to them ; that in the market of Texas there is no competition between the Waters-Pierce Oil Company and such other parties; and that by reason of the facts stated the Waters-Pierce Oil Company has monopolized and still

monopolizes the trade in petroleum and its products in Texas, and performs the unlawful purpose of said trust agreements "in reference to the trade in said commodities which are of prime importance and necessity to the people of the State."

That since the 6th day of July, 1889, the oil company has made contracts, sometimes in writing and sometimes verbally, with merchants and others through its agents in this State, in consideration of a small rebate on the oil purchased, or for other considerations unknown to the plaintiff, whereby the said merchants have contracted not to buy any oil from any other person or corporation, but will "deal with and buy and sell oils obtained from said defendant company exclusively," and in some instances agreed with said company not to sell the oils so bought to any one buying from or dealing with any other person or corporation dealing in oils in competition with the defendant.

The names of some of the persons and merchants are given.

That about the year 1890 the defendant company entered into contracts with certain jobbers and merchants of the city of Brownsville, whereby they respectively agreed to buy all the oil needed in their respective businesses of the defendant company for various rebates on the box or gallon, and they were respectively to sell such oil to retail dealers at the invoice price fixed by the company, and various penalties were agreed to be paid to the company if oil should be purchased from any one else, and that business was done under said contracts until certain dates in the latter part of December, 1896.

That the company is seeking to renew all of said contracts, and is seeking to carry on its business in said city under the same.

That the Eagle Refining Company is a corporation legally incorporated in Ohio for the purpose of manufacturing, refining, compounding and dealing in all kinds of oils, greases and petroleum and its various products, and duly obtained a permit to do such business in the State of Texas on the 6th day of November, 1891, and began to transact such business in the State "in honest and sharp competition with the Waters-

Pierce Oil Company," and continued to do so up to the 13th day of October, 1894, when the two companies " entered into a certain combination and trust," the exact terms of which are unknown to petitioner, whereby the oil company secured the control of all the property, business and franchises of the Eagle Company, and the latter agreed to withdraw from doing any business in the State in competition with the oil company for fifteen years.

That since said date the oil company has been doing business in the name of the Eagle Company in apparent, but not real, competition with itself, and that said contract has affected the production of petroleum and has affected also the sale of its products.

It is also averred that prior to the year 1890 one C. W. Robinson was engaged in the oil business in competition with the oil company, and that some day in that year the company entered into an agreement with him by the terms of which the company secured the control and management of his business, although it is conducted in his name; that by the terms of the agreement he is to buy and sell exclusively the oils of the company, and the agreement is still in force.

That the contracts and agreements with the merchants aforesaid and with the Eagle Refining Company and said Robinson were for the purposes hereinbefore enumerated, and resulted in effecting such purposes.

That the oil company, since its permit to do business in the State, has abused its franchises and privileges; has monopolized the oil trade in the State; has unlawfully entered into the contracts mentioned above, and is engaged in making similar ones; has lowered the price of its oils against competing oils below a reasonable and fair market price; either has refused to sell or would sell only at an exorbitant figure to any person who dealt in competing oils; has pursued and carried out a system of threats and intimidations and bribery to prevent parties from buying or selling competing oils; has threatened those dealing in such oils with a ruinous reduction of price, has given rebates to buyers from it as an inducement not to patronize a competitor, has offered money or the pay-

ment of expenses incident thereto, to get and induce parties ordering competing oils to countermand the orders, and refuse to take the same after contracting therefor. That this is the general course of dealing pursued by the oil company, and when competitive oils are driven out of the market thereby it raises the price of oil far above the true and reasonable market value of the same.

That such course of dealing has resulted in the complete monopolization by the oil company with the oil trade of the State, and is still stifling and threatening legitimate competition to the great injury of the people of the State.

That by reason of the acts detailed the oil company has forfeited its right and permit to do business in the State.

To the petition of the State the oil company demurred and answered. In its demurrer it urged the repugnancy of the statutes of the 1889 and 1895 to the Fourteenth Amendment of the Constitution of the United States, and the insufficiency of the allegations of the petition as a ground of forfeiture of its permit to do business in the State. In its answer it denied generally and specifically those allegations, claimed the permit as a contract, and invoked the Constitution of the United States against its impairment by a subsequent law of the State; claimed to be engaged in interstate commerce, and denied the jurisdiction of the State to regulate it.

There was evidence submitted on the issues, but the court instructed the jury that the evidence was not sufficient to show that the oil company became a member of or entered into the Standard Oil Trust agreement. Also that the contracts with the Eagle Refining Company and with C. W. Robinson were not in violation of the laws of the State, and confined their consideration to their bearing upon the course of dealing of the company in the State.

The court also withdrew transactions of interstate commerce from the consideration of the jury, and submitted only those of local business.

Applying the facts of the case to the definitions of the statutes, the court instructed the jury as follows:

" Now, if you find from the evidence that the defendant com-

pany, acting through its duly appointed and authorized agents, entered into and performed a contract in the State of Texas with any of the parties dealing in, buying and selling oils, as named and set out in plaintiff's petition, since July 6, 1889, by the terms of which contract it was agreed that said parties were to buy oil from the defendant company exclusively for a specified time and from no other source, in consideration of rebates allowed them by defendant company, or for any other valuable consideration, or if you find that said company, so acting through its duly appointed and authorized agents since said date, made, entered into and carried out a contract in this State with any of the persons named and as stated in plaintiff's petition, by the terms of which said parties bound and obligated themselves for a valuable consideration to buy all the oils from defendant company, and not to buy oils from any other source for any specified time, and not to sell said oils so bought from defendant company to any person handling or dealing in oils in competition with defendant company, or if said defendant company, so acting since said date, made and entered into and carried out in this State a contract with any of the parties as stated and named in plaintiff's petition, by the terms of which said parties, for a valuable consideration, bound and obligated themselves to said company, either verbally or in writing, to buy all their oils exclusively from defendant company and from no other source, and to sell said oils so bought to other parties desiring to purchase the same at a price fixed by said company's officers or agents, and you further find that said sales of oils were not interstate commerce, as that is hereinafter explained to you, and that said officers or agents so acting for said company in making said contracts, if any were so made, were acting in the scope of their employment and duty, and were authorized to make such contracts by the governing officers of said company, or that said governing officers, with a knowledge that said contracts had been made, consented to and ratified or carried out the same after they were made, then you are instructed that the defendant would be guilty of violating the laws against trusts of this State, and if you so find the facts to be as above stated you will return a verdict for the plaintiff against the defendant Waters-Pierce Oil Company."

The jury rendered a verdict against the defendant company, but in favor of the individual defendants, upon which the following judgment was entered against the company:

"It is therefore ordered, adjudged and decreed by the court that the defendant, the Waters-Pierce Oil Company, be, and is hereby, denied the right and prohibited from doing any business within this State, and that its permit to do business within this State, heretofore issued July 6, 1889, by the secretary of state of this State, be, and the same is hereby, cancelled and held for naught, and that said defendant, the Waters-Pierce Oil Company, its managers, superintendents, agents, servants and attorneys, be, and are hereby, perpetually enjoined and restrained from doing business within this State.

"Nothing herein shall be construed to in any way affect or apply to or prohibit said defendant's right to engage in interstate commerce within this State."

On appeal to the Court of Civil Appeals the judgment was affirmed, the court holding that the statutes were valid exercises of the police power of the State. It also held that the statute of 1889 was a condition of the permit of the Waters-Pierce Oil Company to do business in the State. A rehearing was denied. A writ of error to the Supreme Court of the State was denied, and the case was then brought here.

The assignments of error express in various ways the alleged discriminations of the statutes between persons and classes of persons, and the alleged deprivation of many persons of the right and liberty of contract, while permitting such right and liberty to others; the denial to foreign corporations of the right to do any business in the State, interstate or otherwise; the assumption by the State of the power to punish acts done out of the State, and authorizing a conviction of what are claimed to be criminal offences by a preponderance of proof.

*Mr. George Clark* and *Mr. John D. Johnson* for plaintiff in error. *Mr. D. C. Bolinger* was on their brief. *Mr. S. C. T. Dodd* filed a brief for same.

*Mr. T. S. Smith* for defendant in error. *Mr. M. M. Crane* and *Mr. T. A. Fuller* filed a brief for same.

MR. JUSTICE McKENNA, after making the above statement, delivered the opinion of the court.

Transactions of interstate commerce were withdrawn from the consideration of the jury and were also excepted from the judgment. The transactions of local commerce which were held by the state courts, trial and appellate, to be violations of the statutes consisted in contracts with certain merchants by which the plaintiff in error required them to buy oils exclusively from it, "and from no other source;" or buy oils exclusively from it and not to sell to any person handling competing oils; or to buy exclusively from it and to sell at a price fixed by it.

The statutes must be considered in reference to these contracts. In any other aspect they are not subject to our review on this record, except the power of the state court to restrict their regulation to local commerce, upon which a contention is raised. It is based on the following provision :

"Every foreign corporation violating any of the provisions of this act is hereby denied the right and prohibited from doing any business within this State, and it shall be the duty of the attorney general to enforce this provision by injunction or other proceedings in the district court of Travis County in the name of the State of Texas."

The claim is, if we understand it, that the statute prohibits all business of foreign corporations, and hence is unconstitutional as including interstate business, and cannot be limited by judicial construction to local business, and the unconstitutional taint thereby removed. To sustain the contention *United States* v. *Reese*, 92 U. S. 214, 221 ; *Trade Mark Cases*, 100 U. S. 82 ; *United States* v. *Harris*, 106 U. S. 629 ; *Baldwin* v. *Franks*, 120 U. S. 678, and some other cases are cited. They do not sustain the contention. The interpretation of certain statutes of the United States was involved, and the court finding the meaning of the statutes plain, decided that it could not be changed by construction even to save the statutes from unconstitutionality. This was but an exercise of judicial interpretation.

The courts of Texas have like power of interpretation of the

statutes of Texas.   What they say the statutes of that State mean we must accept them to mean whether it is declared by limiting the objects of their general language or by separating their provisions into valid and invalid parts.   *Tullis* v. *Lake Erie & Western Railroad*, 175 U. S. 348; *St. Louis, Iron Mountain, &c., Railroad* v. *Paul*, 173 U. S. 404.

We may return therefore to the propositions which were submitted to the jury.

They have been broadly discussed, and considerations have been presented which transcend them, and relate to grievances which do not affect plaintiff in error.   We are confined to its grievance.   *Clark* v. *Kansas City*, 176 U. S. 114; *Tullis* v. *Lake Erie & Western Railroad*, 175 U. S. 348.

What is it?   It is said that the statutes of Texas limit its right to make contracts and take away the property or liberty assured by the Fourteenth Amendment of the Constitution of the United States.   Besides, it is asserted that the statutes make many discriminations, between persons and classes of persons, and able arguments are built upon their alleged injustice and oppression.   We are not called upon to answer those arguments or to condemn or vindicate the statutes on this record.

The plaintiff in error is a foreign corporation, and what right of contracting has it in the State of Texas?   This is the only inquiry, and it cannot find an answer in the rights of natural persons.   It can only find an answer in the rights of corporations and the power of the State over them.   What those rights are and what that power is has often been declared by this court.

A corporation is the creature of the law, and none of its powers are original.   They are precisely what the incorporating act has made them, and can only be exerted in the manner which that act authorizes.   In other words, the State prescribes the purposes of a corporation and the means of executing those purposes.   Purposes and means are within the State's control.   This is true as to domestic corporations.   It has even a broader application to foreign corporations.

*Bank of Augusta* v. *Earle*, 13 Pet. 519, involved the power of the Bank of Augusta, chartered by the State of Georgia, and invested by its charter with a function of dealing in bills of

exchange, to exercise that function in the State of Alabama. In passing on the question certain principles were declared which have never since been disturbed.

A contract of the corporation, it was declared, is the contract of the legal entity, and not of its individual members. Its rights are those given to it in that character, and not the rights which belong to its constituent citizens.

Its charter confers its powers and the means of executing them, and such powers and means can only be exercised in other States by the permission of the latter.

Chief Justice Taney said, delivering the opinion of the court, p. 587:

"The nature and character of a corporation created by a statute, and the extent of the powers which it may lawfully exercise, have upon several occasions been under consideration in this court. In the case of *Head* v. *Providence Insurance Company*, 2 Cranch, 127, Chief Justice Marshall, in delivering the opinion of the court, said: 'Without ascribing to this body, which in its corporate capacity is the mere creature of the act to which it owes its existence, all the qualities and disabilities annexed by the common law to ancient institutions of this sort, it may correctly be said to be precisely what the incorporating act has made it; to derive all its powers from that act, and to be capable of exerting its faculties only in the manner which that act authorizes. To this source of its being, then, we must recur to ascertain its powers; and to determine whether it can complete a contract by such communications as are in this record.' In the case of *Dartmouth College* v. *Woodward*, 4 Wheat. 636, the same principle was again decided by the court. 'A corporation,' said the court, 'is an artificial being, invisible, intangible and existing only in contemplation of law. Being a mere creature of the law, it possesses only those properties which the character of its creation confers upon it, either expressly or as incidental to its very existence.' And in the case of the *Bank of the United States* v. *Dandridge*, 12 Wheat. 64, where the question in relation to the powers of corporations and their mode of action were very carefully considered, the court said: 'But whatever may be the implied powers of aggregate corporations,

by the common law, and the modes by which those powers are to be carried into operation, corporations created by statute, must depend, both for their powers and the mode of exercising them, upon the true construction of the statute itself.' "

The power of the bank to deal in bills of exchange in the State of Alabama was sustained, but it was put upon the ground that neither the policy of the State nor its laws forbade it, and that the law of international comity which prevailed there sustained it.

In *Paul* v. *Virginia*, 8 Wall. 168, 181, the dependent and derivative rights of corporations were again declared. *Bank of Augusta* v. *Earle* was quoted from, and it was again decided that a corporation is the mere creation of local law, and can have no legal existence beyond the limits of the sovereignty where created, and the recognition of its existence in other States and the enforcement of its contracts made therein depend purely upon the comity of those States.

" Having no absolute right of recognition in other States, but depending for such recognition and enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those States may think proper to impose. They may exclude the foreign corporation entirely; they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest. The whole matter rests in their discretion."

And it was also decided that a corporation did not have the rights of its personal members, and could not invoke that provision of section 2, article 4, of the Constitution of the United States, which gave to the citizens of each State the privileges and immunities of citizens of the several States. See also *Pembina Mining Co.* v. *Penn*, 125 U. S. 181; *Ducat* v. *Chicago*, 10 Wall. 410. And it has since been held in *Blake* v. *McClung*, 172 U. S. 239, and in *Orient Insurance Company* v. *Daggs*, 172 U. S. 557, that the prohibitive words of the Fourteenth Amendment have no broader application in that respect.

In *Blake* v. *McClung*, a Virginia corporation was denied the

right to participate upon terms of equality with Tennessee creditors in the distribution of the assets of a British corporation in the hands of a Tennessee court.

In *Orient Insurance Co.* v. *Daggs*, the right of the company, a Connecticut corporation, to limit by contract its liability to the actual damages caused by fire, notwithstanding a provision in a statute of Missouri making the measure of damages in case of total loss the value of the property stated in the policy, was denied.

See also *Pembina Mining Co.* v. *Penn*, 125 U. S. 181.

In *Hooper* v. *California*, 155 U. S. 648, conditions upon a foreign corporation were considered, and a statute of California sustained, making it a misdemeanor for a person in that State to procure insurance for a resident in the State from an insurance company not incorporated under its laws, and which had not filed a bond required by the law of the State. All preceding cases were cited, and it was assumed as settled "that the right of a foreign corporation to engage in business within a State other than that of its creation depends solely upon the will of such other State." And the exception to the rule was stated to be "only cases where a corporation created by one State rests its right to enter another and engage in business therein upon the Federal nature of its business."

This exception was recognized in the case at bar and the business of the plaintiff in error of a Federal nature excluded from the operation of the judgment.

The pending case might be rested on *Hooper* v. *California*, simply as authority, and we have entered upon the reasoning upon which it was based, because its application to the contentions of the plaintiff in error is not properly estimated in the arguments of counsel.

Nor can the plaintiff in error claim an exemption from the principle on the ground that the permit of the company was a contract inviolable against subsequent legislation by the State. That contention was presented to the Court of Civil Appeals, and the court properly replied: "After the act of 1889 went into effect the State granted to appellant [plaintiff in error here] authority to engage in its business within the State for a

period of ten years.   The act of 1889, as well as that of 1895, provides for the forfeiture of the permit of a foreign corporation which may violate any of the provisions of the statute. . . .   The act in force when the appellant entered the State informed it that for a violation of its terms the permit to do business here would be forfeited.   This provision of the law was as much a part of the obligation, and as binding upon the appellant, as if it had been expressly made part of the permit."

The statute of 1889, therefore, was a condition upon the plaintiff in error within the power of the State to impose, and whatever its limitations were upon the power of contracting, whatever its discriminations were, they became conditions of the permit and were accepted with it.

The statute was not repealed by the act of 1895.   The only substantial addition made by the latter was to exclude from its provisions organizations of laborers, for the purpose of maintaining a standard of wages.   The Court of Civil Appeals said of it, p. 18 :

"If the clause in the act of 1895 which exempts from its operation labor organizations for the purpose of maintaining their wages would render that statute obnoxious to the Fourteenth Amendment to the Constitution, which we do not think the case, the entire act would be void, and could not operate as a repeal of the former law of 1889; and so that if it should be determined that this latter act was unconstitutional, the former act would be in force, and would not be subject to the objections urged against it, for the reasons stated by us in passing upon these objections, and therefore the State could maintain a case under this act."

In other words, as to that act the situation is this: It is either constitutional or unconstitutional.   If it is constitutional, the plaintiff in error has no legal cause to complain of it.   If unconstitutional, it does not affect the act of 1889, and that, as we have seen, imposes valid conditions upon the plaintiff in error, and their violation subjected its permit to do business in the State to forfeiture.

*Judgment affirmed.*

MR. JUSTICE HARLAN dissented.