V. D. GUIRE v. BOARD OF COMMISSIONERS OF CALDWELL COUNTY.

(Filed 10 September, 1919.)

1. **Constitutional Law—Statutes—Amendments— Counties— Municipal Corporations—Bonds.**

    Where a proposed issue of bonds by a municipality has been favorably voted upon under the provisions of a constitutional statute, restricting the rate of interest, but the rate of interest allowed has been increased by a later and unconstitutional amendment, and the election has been held with reference to the increased rate, the increased rate over that authorized by the valid statute may be disregarded and the proper municipal authorities may issue valid bonds at the rate of interest authorized in the prior statute, in accordance with its terms.

2. **Constitutional Law— Municipal Corporations— Bonds—Sales—Adjourned Meetings—Statutes.**

    Where the municipal authorities have advertised the sale of bonds to be issued according to the terms of a valid statute, and cannot finish the transaction and consummate the sale on the day designated in the advertisement, they may adjourn over to some other day in the near future for the purpose of completing the matter, especially when they have given due notice of the second meeting, the object of the law being to prevent clandestine sales of bonds of this character.

ACTION tried before *Harding, J.,* at August Term, 1919, of CALDWELL.

This case was before this Court at the last term, and our decision therein is reported in 177 N. C., at p. 516, where the facts are stated, so far as pertinent to that appeal. We there held that the act of 1919 increasing the rate of interest, as fixed by the Public-Local Laws of 1917, ch. 67, from 5 per cent to a rate not exceeding 6 per cent was invalid, not having been passed in accordance with the Constitution, Art. II, sec. 14. Since that case was decided the board of commissioners of the county has properly advertised the meeting for the sale of the bonds, and the meeting was held accordingly, at which the commissioners received and accepted a bid for the bonds at a 5 per cent interest rate. The plaintiff sought and obtained a restraining order, and at the hearing of the application for an injunction the court, by consent of the parties, found the facts, and concluded therefrom that the bonds proposed to be sold to the successful bidder will be valid obligations of the county. The court held the bonds to be valid and so adjudged, but enjoined any issue of bonds bearing more than 5 per cent interest. Plaintiff appealed.

*J. T. Pritchett for plaintiff.*
*Mark Squires for defendant.*

WALKER, J., after stating the case: We will now consider the case with reference to the objections of the plaintiff and their validity, as they are presented in the record and in the findings and judgment of the court:

1. The Public-Local Laws of 1917, ch. 67, provided for a second election if, at the first one, there was an adverse vote by the people. There is no dispute as to the regularity of the election except in one respect, which will presently be noticed. There were two elections held. At the first of these, held in 1917, the result was against a bond issue, and at the second the vote was in favor of issuing the bonds at a rate of interest not exceeding 6 per cent. Both elections were held under chapter 67 of the Public-Local Laws of 1917, as appears by the record; the second, though, was held after the passage of the amendatory act of 1919. That act amended the act of 1917 only in one respect, viz: by striking out "five per cent" and inserting in lieu thereof the words "not exceeding six per cent," and for that reason the call for the election specified the rate, which was not to exceed 6 per cent, but the election was held and conducted under the act of 1917, the other act making no provision for an election but simply changing the rate of interest. The latter act being wholly void, it could not have the effect of repealing or amending the act of 1917, which remained in full force, notwith-

standing the same. There was no intention, expressed or implied, to repeal the old law, but the only purpose was to amend it, and this purpose failed altogether by reason of the invalidity of the later act. This principle is well settled by the authorities. 36 Cyc., 1098, and the numerous cases in the notes which sustain the text. *Waters-Pierce Oil Co. v. State of Texas,* 177 U. S., 28 (44 L. Ed., 657); *City of Lexington v. Bank,* 165 Mo., 671; *Wilkinson v. Board, etc., of Marion Co.,* 158 Ind., 1; *Barker v. Potter,* 55 Neb., 25; *Russell v. Ayer,* 120 N. C., 180. Many other cases are cited in the defendant's brief to the same effect. The people having voted for the issue of bonds at a rate not exceeding 6 per cent, it was equivalent to a vote for bonds at any less rate, as the greater includes the less, and therefore they have approved an issue of bonds at 5 per cent. The submission of the question was irregular, it is true, but not sufficiently so to invalidate the result, when the court has perpetually enjoined any issue above the proper rate, as was done in this case. This is amply protective of the interests of the taxpayers. It was held in *City of Quincy v. Warfield,* 25 Ill., 317, 321, that where bonds were issued bearing interest at 12 per cent, whereas no more than 8 per cent interest was allowed in the statute by which they were authorized, the bonds were good at the rate of 8 per cent, or *pro tanto,* and that all in excess of that rate must be rejected. The Court said: "It is contended that the bond is void because it stipulates for a greater rate of interest than 8 per cent per annum. In the case of *Johnson v. Stark County,* 24 Ill., 75, we recognized the doctrine that in exercising a power all acts performed in excess of or beyond the power delegated must be rejected as unwarranted; but if, after the rejection of such acts, there has been enough done to show a proper execution of the power, the act will be sustained, irrespective of the acts performed beyond the power delegated. In other words, so much of the act done as is within the power granted shall be upheld, whilst all beyond the power shall be rejected as an excess of power. Upon the ruling in this case we must decide, and do decide, that the bond is valid and binding on the city, with interest, to be calculated at 8 per cent per annum. It is not vitiated by the excess, but only *pro tanto,* and the court trying the case should have made the deduction and given judgment for the bond, with interest at 8 per cent per annum, the city having no power to stipulate for interest beyond that rate." And likewise it was held in *Parkinson v. City of Parker,* 85 Pa. St., 313, that "The right of a borough to borrow money within the prescribed limits and issue certificates therefor, bearing interest, is conferred by the borough law of the State, and the fact that the bond in this case called for 8 per cent interest did not invalidate it, and it was only void for the excess over the legal rate of interest."

GUIRE *v.* COMMISSIONERS.

2. The proposed issue of bonds is not invalid upon the ground, alleged by the plaintiff, that the commissioners of the county have not provided for three series of bonds payable at three different dates. That arrangement, as authorized by the act of 1917, was merely permissive or discretionary with the board, and was manifestly intended to be so, as otherwise the provisions of the act would be conflicting. It empowers the commissioners, in the exercise of their discretion, to fix the maturity of the bonds, so that they will be payable at such time or times not exceeding forty years from the date thereof, and at such place or places as the board may determine, and also conferred upon them the power to prescribe the form and tenor of the bonds. This general authority was broadly given, upon the theory that a restricted one might militate against an advantageous sale of the bonds. Public-Local Laws of 1917, ch. 67, sec. 1.

3. The meeting at which bids were to be received and accepted was properly advertised according to Public Laws of 1917, chs. 147 and 174. The notice as to the first meeting was a strict compliance with those statutes, and as the board could not finish the transaction and consummate the sale at that meeting, it was competent for them to adjourn over to another day in the near future, as they did, and complete the business. This very question was decided in *McChesney v. City of Chicago,* 201 Ill., 344, where it was held that such an adjournment was clearly legal, as the interested parties must take notice of the same when the first meeting has been properly advertised. But in our case the board did give special notice of the second meeting. The object of this provision of the law was to prevent secret or clandestine sales of municipal and other bonds of public corporations, and this purpose was fully accomplished in the present instance.

4. This contention is substantially the same as the first one. The particular form of the objection here is that the call for the election and the notice of the same was confined to the issuing of bonds at a rate not exceeding 6 per cent, but the form of the objection is immaterial, as we are concerned more with its substance. It involves the same principle we applied to the first contention and upon which we decided it. If the people voted for bonds at a rate not exceeding 6 per cent, they were intelligent enough to know that it meant a 6 per cent rate or any rate below it, which of course included a 5 per cent rate. Suppose the act of 1919 had not been passed, then they could have voted only for a rate not exceeding 5 per cent under the act of 1917, as it provides for such a rate, that is, a maximum rate of 5 per cent. If the result had been favorable to the issuing of the bonds, can it be doubted that the commissioners could have validly issued them at any rate below 5 per cent? The object of fixing a maximum rate of interest was to enable the com-

missioners to get a lower rate than 5 per cent, if they could do so, and there was no other reason for it. One of the familiar maxims of the law is *Utile per inutile non vitiatur,* which means that surplusage does not vitiate that which, in other respects, is good and valid; and there is another, *Surplusagium non nocet,* or that surplusage is innocuous and must be disregarded. Broom's Legal Maxims (6 Am. Ed.), p. 462, marg. p. 603. Where an award recited that the three arbitrators had concurred in it, whereas one had not, but had dissented, it was held (*White v. Sharp,* 12 M. & W., 712), applying the maxim that the award was good, as the recital, so far as it stated the higher number of concurring arbitrators, was immaterial and useless, as the two were sufficient. So here the 5 per cent was valid and sufficient to sustain the election, and the recital of the 6 per cent, or 1 per cent more, being surplusage and useless, does not vitiate that which is legal. The election was held under the act of 1917, by clear and specific reference to it in the call for it. There was no machinery provided in the act of 1919 for holding an election, and in this respect the former act was left intact. All of the objections of the plaintiff were properly overruled.

Affirmed.