## FIFTH AVENUE COACH COMPANY *v.* CITY OF NEW YORK.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 159.   Argued April 27, 28, 1911.—Decided May 29, 1911.

The courts of a State are competent to construe the laws of the State and to determine what powers a corporation derives thereunder, and the use to which such corporation may employ its necessary property; and so *held* as to uses to which stages may be put by a transportation company.

Whatever the general rights as to corporate property may be, a State, in granting a charter, may define and limit the use of property necessary to the exercise of the granted powers.

The rights of one to do that which if done by all would work public harm and injury are not greater because others refrain from exercising such rights.

Classification based on reasonable distinctions is not an unconstitutional denial of equal protection of the laws; and so *held* that an

ordinance of the city of New York prohibiting advertising vehicles
in a certain street is not unconstitutional as denying equal protec-
tion to a transportation company operating stages on such street
either because signs of the owners may be displayed on business
wagons, or because another transportation company may display
advertising signs on its structure. There is a purpose to be achieved,
as well as a distinction, which justifies the classification.

This court may take judicial notice of the density of traffic on a well
known thoroughfare.

Where rights exist to one they exist to all of the class to which
that one belongs.

The charter of this transportation company *held* not to contain any
provisions giving it such contract right to use its vehicles for adver-
tising purposes as rendered a subsequent ordinance prohibiting such
use unconstitutional under the contract clause of the Constitution.

A contract with a corporation is subject to the limitations of the char-
ter rights of the corporation and is not impaired within the mean-
ing of the contract clause of the Constitution by subsequent legis-
lation that does not extend such limitations.

194 N. Y., 19, affirmed.

THE facts, which involve the validity of an ordinance of
the city of New York prohibiting the display of advertise-
ments under certain conditions, are stated in the opinion.

*Mr. William H. Page*, with whom *Mr. Gilbert H. Craw-
ford* was on the brief, for plaintiff in error:

Plaintiff in error possesses a vested property right to
rent space for the display of advertisements upon its
stages, which is incidental to the ownership of the stages.
The doctrine of *ultra vires* has no application.

The renting of space to be used for the display of ad-
vertisements is a property right belonging to the plaintiff
in error, incidental to its ownership of the Fifth Avenue
stages. *Foster* v. *London &c. Ry. Co.* (Ct. of App.), L. R.
(1895) 1 Q. B. D. 711, 720; *Nantasket Beach Steamboat
Co.* v. *Shea*, 182 Massachusetts, 147; *Louisiana* v. *Ware-
house Co.*, 109 Louisiana, 64; *Benton* v. *City of Elizabeth*,
61 N. J. L. 411; *Coal Creek Co.* v. *Tenn. &c. Co.*, 106
Tennessee, 651; *French* v. *Quincy*, 3 Allen, 9; see also

*Spaulding* v. *City of Lowell,* 23 Pick. 71; *Worden* v. *City of New Bedford,* 131 Massachusetts, 23; *People* v. *City of Platteville,* 71 Wisconsin, 139; *Forrest* v. *Manchester Ry. Co.,* 30 Beav. 40; *Brown* v. *Winnisimmet Co.,* 11 Allen, 326.

All the corporations, whose rights were considered in the cases cited, were alike subject to the rule that corporations have no powers except those expressly granted by the legislature, and in every case the particular power sustained was not given expressly by charter, but was upheld as an implied incidental or appurtenant property right. *Jacksonville Railway & Navigation Co.* v. *Hooper,* 160 U. S. 514; 525; *N. Y. M. & N. Trans. Co.* v. *Shea,* 30 App. Div. (N. Y.) 266; *Union Pac. Ry. Co.* v. *Chicago, R. I. & P. R. R. Co.,* 51 Fed. Rep. 309; aff'd 163 U. S. 564; *Interborough Co.* v. *New York,* 47 Misc. 221; *S. C.,* 53 Misc. 126. *City* v. *Interborough R. T. Co. and N. Y. City Interborough R. Co.,* 125 App. Div. (N. Y.) 437; *S. C.,* 194 N. Y. 528, upheld the right of the Interborough Rapid Transit Company to use ducts forming part of the construction of the subway, for the transmission of electric current sold by it to a surface railway company.

The right asserted by the plaintiff in error is an incidental right of property, which is independent of the question of corporate powers or franchises. *Foster* v. *London &c. Railway Co., supra.*

When an intrinsically harmless, natural and ordinary use of property is forbidden by law, the owner is deprived of his property within the meaning of the constitutional provision. *People* v. *Green,* 85 App. Div. 400, 406. An obvious, ordinary use of property, as is the renting it to advertisers, is within the protection of the constitutional provision. *People* v. *Otis,* 90 N. Y. 48. See also *Pumpelly* v. *Green Bay Co.,* 13 Wall. 166, 179; *Muhlker* v. *Harlem R. R. Co.,* 197 U. S. 544; *Myer* v. *Adams,* 63 App. Div. (N. Y.) 540, 544; *Re Grade Commissioners,* 6 App. Div. 327, 334; *Belleville* v. *Turnpike Co.,* 234 Illinois, 428, 434.

The doctrine of *ultra vires* has no application. *Railroad Co.* v. *Ellerman*, 105 U. S. 166, 173. Defendant in error has no right to raise the question.

The ordinance as construed by the Court of Appeals is an unlawful exercise of an assumed police power and operates to deprive the plaintiff in error of its property without due process of law in contravention of the Fourteenth Amendment.

A common carrier of passengers cannot be lawfully deprived of the incidental right to increase its income by leasing space on the exterior of screens, forming a necessary structural part of its stages, for the exhibition of advertisements which in no way affect the welfare, comfort, safety, health, convenience or morals of passengers or of the public.

The reasonableness of the ordinance is to be determined from the evidence contained in the record and from the findings based thereon which sustain unqualifiedly the contention of the plaintiff in error. *Egan* v. *Hart*, 165 U. S. 188, 189; *Stanley* v. *Schwalby*, 162 U. S. 255, 278; *Bement* v. *Nat. Harrow Co.*, 186 U. S. 71, 83; *Waters-Pierce Oil Co.* v. *Texas*, 212 U. S. 86, 97.

The unreasonable character of the ordinance appears further from the scope of its provisions, as construed by the Court of Appeals.

This court is not bound by the determination of the state courts either as to the lawfulness of the ordinance or as to its effect upon the rights of the plaintiff in error. *Yick Wo* v. *Hopkins*, 118 U. S. 356, 366; *Dobbins* v. *Los Angeles*, 195 U. S. 223.

A municipal ordinance which prohibits the exercise of a property right which is not a nuisance, and which in no way affects the well-being, health, physical comfort, convenience, safety or morals of the community is, to the extent of such prohibition, unlawful under the Fourteenth Amendment.

As to limits upon the police power precluding the lawfulness of the ordinance, see *Yick Wo Case, supra; Lawton* v. *Steele,* 152 U. S. 133, 136, 138; in this case the court refers to various cases in which so-called police regulations had been declared illegal. *Rockwell* v. *Nearing,* 35 N. Y. 302; *Dobbins* v. *Los Angeles,* 195 U. S. 223; *Mugler* v. *Kansas,* 123 U. S. 623, 661.

If there be any presumption it is to the contrary. The omnipresence of advertisements upon private property adjacent to highways along the principal thoroughfares of our large cities and trunk lines of railroads in or adjacent to every great city and even small ones bears forceful testimony to this effect. See *Yates* v. *Milwaukee,* 10 Wall. 497.

When an intrinsically harmless use of private property is prohibited by law, it must appear clearly that the prohibition accomplishes some purpose which is of benefit to the community. *Fisher Co.* v. *Woods,* 187 N. Y. 90; *Matter of Jacobs,* 98 N. Y. 98; *People* v. *Gillson,* 109 N. Y. 389; *People* v. *Armstrong,* 73 Michigan, 288; *People* v. *Rochester,* 44 Hun, 166.

The display of advertisements made by the advertising company under contract with the plaintiff, or the lease of space by the latter to the former, is not a nuisance and in no way injures or affects the welfare, health, physical comfort, safety, convenience or morals of passengers, or of the public.

This section has no application to the advertisements in question in this case. Wood on Nuisances, 3d ed., § 801, p. 1177.

The advertisements in question cannot be judicially condemned on æsthetic grounds. *Bleistein* v. *Donaldson Lithographing Co.,* 188 U. S. 239, 251; *Commonwealth* v. *Boston Advertising Co.,* 188 Massachusetts, 348, 352 (1905); and see also *Passaic* v. *Paterson Advertising Co.,* 72 N. J. L. 285; *Bryan* v. *City of Chester,* 212 Pa. 259,

262.    The ordinance cannot be sustained as a proper exercise of the police power as a regulation covering the use of the streets.

The ordinance creates a favored sub-class of vehicles which are permitted to display advertisements, it being self-evident that the term "business notices" includes "advertisements." *Gulf &c. Co.* v. *Ellis*, 165 U. S. 150, 165.

The ordinance clearly discriminates between two classes of passenger carriers, both having chartered rights to use the streets. *Soon • Hing* v. *Crowley*, 113 U. S. 709.

The ordinance impairs the obligation of the contract between the plaintiff in error and the Railway Advertising Company. *Delmas* v. *U. S. Insurance Co.*, 14 Wall. 661, 668; *N. Y., N. H. & H. R. R. Co.* v. *Interstate Com. Comm.*, 200 U. S. 361, 401; *Chicago* v. *Sheldon*, 9 Wall. 50, 55.

The ordinance also operates to impair the obligation of the contract between the State of New York and the plaintiff.

This court has jurisdiction and will determine for itself the question of whether or not such a contract exists and whether the ordinance complained of impairs its obligation. *Mobile & Ohio R. R.* v. *Tennessee*, 153 U. S. 486, 493; *Society &c.* v. *Town of Pawlet*, 4 Pet. 480, 502.

*Mr. Terence Farley*, with whom *Mr. Theodore Connoly* was on the brief, for defendant in error:

A common carrier has no common-law right to use the public highways for advertising, not its own, but somebody's else business. Such purposes are absolutely and entirely foreign to the objects of its incorporation. *Armstrong* v. *Murphy*, 65 App. Div. 123; *Schwab* v. *Grant*, 126 N. Y. 473, 481, 482; *Palmer* v. *Larchmont Electric Co.*,

158 N. Y. 231; *Osborne* v. *Auburn Telephone Co.*, 189 N. Y. 393.

The highway may only be used for municipal or street purposes. The display of advertisements upon the stages of the plaintiff in error is neither a municipal nor a street purpose. *Hatfield* v. *Straus*, 189 N. Y. 208; *Callanan* v. *Gilman*, 107 N. Y. 360; *Hoey* v. *Gilroy*, 129 N. Y. 132; *Jorgensen* v. *Squires*, 144 N. Y. 280. See also *Ackerman* v. *True*, 175 N. Y. 353.

It is doubtful whether the city itself could sanction these displays. *Belt* v. *St. Louis*, 161 Missouri, 371

Grants of franchises to public corporations are to be strictly construed. Nothing passes by intendment, and the only powers vested in them are those which are either expressly conferred or are necessarily implied for the purpose of enabling them to transact their public duties. *Coosaw Min. Co.* v. *South Carolina*, 144 U. S. 550; *Water Co.* v. *Knoxville*, 200 U. S. 22; *Blair* v. *Chicago*, 201 U. S. 400.

A corporation has no powers whatever excepting those given by its charter or the law under which it is incorporated, either directly or as incidental to its purposes and existence. *Plank Road Co.* v. *Douglass*, 9 N. Y. 444; *Ren. & Sar. Ry.* v. *Davis*, 43 N. Y. 137; *N. Y. & H. R. R. Co.* v. *Kip*, 46 N. Y. 546; *Mohawk Bridge Co.* v. *Utica &c. Co.*, 6 Paige, 554; *Thomas* v. *Railroad Co.*, 101 U. S. 71, 82.

The private business of advertising tobacco, cigarettes, soap and toilet articles, is not incidental to the exercise of a public franchise to operate stage coaches for hire. It is not even an "incidental power." *First M. E. Church* v. *Dixon*, 178 Illinois, 260.

An "incidental power" is one which is directly and immediately appropriate to the execution of the specific power granted, and not one which has only a slight or remote relation to it. *Hood* v. *New York & N. H. R. Co.*,

22 Connecticut, 1, 16; *People ex rel. Peabody* v. *Chicago Gas Trust Co.,* 130 Illinois, 268, 283; 8 L. R. A. 497; *Burke* v. *Mead,* 159 Indiana, 252; 64 N. E. Rep. 880, 883; *State ex rel. Jackson* v. *Newman,* 51 La. Ann. 833; 25 So. Rep. 408; *Franklin Co.* v. *Lewiston Sav. Bank,* 68 Maine, 43, 45; 28 Am. Rep. 9.

An incidental power exists only for the purpose of enabling a corporation to carry out the powers expressly granted to it. *Moloney* v. *Pullman's Palace Car Co.,* 175 Illinois, 125; *Alton Mfg. Co.* v. *Garrett Biblical Institute,* 243 Illinois, 298; *Marshalltown Stone Co.* v. *Des Moines Brick Co.,* 126 N. W. Rep. 190; *State* v. *Morgan's L. & T. R. & S. S. Co.,* 106 Louisiana, 513.

The exercise of a power which might be beneficial to the principal business is not necessarily incidental to it. *Gause* v. *Commonwealth Trust Co.,* 196 N. Y. 134, 144; *Healy* v. *Illinois C. R. Co.,* 233 Illinois, 378; *Burke* v. *Mead,* 159 Indiana, 252; *Nicollet Bank* v. *Frisk-Turner Co.,* 71 Minnesota, 413; *Victor* v. *Louise Cotton Mills,* 148 N. Car. 107; *Curtis* v. *Leavitt,* 15 N. Y. 9, 165; *Peabody* v. *Chicago Gas Trust Co.,* 130 Illinois, 268; *Chewacla Lime-Works* v. *Dismukes,* 87 Alabama, 344; *Moloney* v. *Pullman's Palace Car Co.,* 175 Illinois, 125; *Hood* v. *N. Y. & N. H. R. Co.,* 22 Connecticut, 502; *Mutual Sav. Bank* v. *Meridan Agri. Co.,* 24 Connecticut, 159; *Naugatuck R. Co.* v. *Waterbury Button Co.,* 24 Connecticut, 468; *Elmore* v. *Naugatuck R. Co.,* 23 Connecticut, 457; *Penna. & Del. Nav. Co.* v. *Dandridge,* 8 Gill & J. (Md.) 248; *Orr* v. *Lacey,* 2 Doug. (Mich.) 230; *Hoagland* v. *Hannibal & St. Jo. R. Co.,* 39 Missouri, 451; *Root* v. *Godard,* 3 McLean (U. S. C. C.), 102; *Jacksonville &c. Ry. Co.* v. *Hooper,* 160 U. S. 514. See also the discussions of this subject in 2 Beach, Private Corpns., § 406 (c); 2 Cook, Corporations, 6th ed., § 681; 1 Elliott on Railroads, 2d ed., § 379; Field, Private Corporations, §§ 53, 54; 4 Thompson, Corporations, § 5638; 1 Wood on Railroads (Minor's ed.), § 170; *Davis* v. *Old*

*Colony R. R. Co.,* 131 Massachusetts, 258, 272; *Pears* v. *Manhattan R. R. Co.,* N. Y. L. J., Jan. 3, 1890; *Pittsburg Traction Co.* v. *Seidell,* 6 Pa. Dist. (C. P.) 414; *National Car Adv. Co.* v. *L. & N. R. R. Co.,* 110 Virginia, 413.

The attempted exercise of powers which are not incidental to those which are either expressly granted or necessarily implied, is *ultra vires. Pearce* ₁v. *Madison &c. R. R. Co.,* 21 How. (U. S.) 441; *Wiswall* v. *Plank Road Co.,* 56 N. Car. 183; *Downing* v. *Mt. Wash. Road Co.,* 40 N. H. 230; *Penna. Co.* v. *Dandridge,* 8 Gill & J. (Md.) 248. See also *Abbott* v. *Baltimore Packet Co.,* 1 Md. Ch. Dec. 542; *N. O., Florida & H. S. Co.* v. *Ocean Dry Dock Co.,* 28 La. Ann. 173.

The advertisements in question constitute a violation of the city ordinances. *Dry Dock, E. B. & B. R. R. Co.* v. *The Mayor &c.,* 47 Hun, 221.

The automobile stages of the plaintiff in error are vehicles of some description. They were attempted to be employed in a dual capacity, as stage coaches for the transportation of passengers; and as advertising wagons. *Luce* v. *Hassam,* 76 Vermont, 450.

The ordinance in question is a valid exercise of the legislative power of the city. The subject-matter of the legislation is within the powers of the corporation adopting it; it is in proper form; and it is perfectly reasonable. *Ringelstein* v. *Chicago,* 128 Ill. App. 483; McQuillan on Municipal Ordinances, § 186; *Wettengel* v. *City of Denver,* 20 Colorado, 552; *Commonwealth* v. *McCafferty,* 145 Massachusetts, 384; *Commonwealth* v. *Plaisted,* 148 Massachusetts, 375; *Commonwealth* v. *Ellis,* 158 Massachusetts, 555; *Philadelphia* v. *Brabender,* 201 Pa. St. 574; *Rochester* v. *West,* 164 N. Y. 510.

The validity of a statute or ordinance is not to be determined from its effect in a particular case, but from its general purpose and its efficiency to effect that end. *Gunning System* v. *City of Buffalo,* 75 App. Div. 31;

*Chicago* v. *Gunning System,* 214 Illinois, 628; *S. C.,* 2 Am. & Eng. Ann, Cases, 897.

MR. JUSTICE MCKENNA delivered the opinion of the court.

Plaintiff in error, which was also plaintiff in the court below, and we shall so refer to it, brought suit against the city in the Supreme Court of the County of New York. It alleged the following: It is a corporation duly formed and organized under the laws of the State of New York, and engaged in the operation of automobile stages upon routes extending along Fifth Avenue and other streets in the city of New York under and in pursuance of certain acts of the legislature of the State, having acquired, under various acts, all the property rights and franchises of the Fifth Avenue Transportation Company, Limited.

The city is a municipal corporation, organized under the laws of the State, and exercises its powers through officers and departments.

The plaintiff has operated stages upon its routes, and has used the interior of them for the display of advertising signs or matter, for many years. In May, 1905, with the complete substitution of automobile stages for horse stages, which was effected in July, 1907, it began to utilize and now utilizes, the exterior of its stages for such purposes, which it is able to do by reason of the necessary difference in form of the new vehicle and in the consequent increase of space adapted to use in the display of advertising matter, and from such use it is enabled to secure a substantial income from portions of its property not susceptible of being used otherwise for the purpose of its business.

The city, through its various officials, has interfered with such advertising, and intends to interfere with the operations of plaintiff's stages; and to prevent it from maintaining advertising signs upon the exterior thereof,

which will materially impair plaintiff's business, reduce
its income, interfere with the exercise of its rights and
franchises under the laws of the State, and "infringe its
constitutional right to freedom in the use of its property."
The damage to plaintiff will be irreparable, and no ade-
quate compensation therefor can be obtained at law.

A permanent injunction was prayed.

The city answered, denying some allegations and ad-
mitting others, and set out a number of ordinances which
precede that in controversy and set out the latter as follows:

"No advertising trucks, vans or wagons shall be allowed
in the streets of the Borough of Manhattan, under a
penalty of ten dollars for each offense. Nothing herein
contained shall prevent the putting of business notices
upon ordinary business wagons, so long as such wagons
are engaged in the usual business or regular work of the
owner, and not used merely or mainly for advertising."

And it alleged that it was its duty to prevent "the dis-
play of the advertisements on the outside of the stages
operated by complainant on Fifth Avenue."

After hearing, a judgment was entered dismissing the
complaint. It was affirmed successively by the Appellate
Division and by the Court of Appeals.

The trial court found that plaintiff had succeeded to all
of the "rights, privileges, franchises and properties" of
the Fifth Avenue Transportation Company, having the
right to use automobile power instead of horses. The
franchises of the transportation company were to carry
passengers and property for hire; to establish, maintain and
operate stage routes for public use in the conveyance of
persons and property and to receive compensation there-
for. It had other franchises not material to mention.

The court also found the following facts:

"The automobile omnibuses now operated over the
routes of the plaintiff herein have two decks, on the lower
of which are longitudinal seats for sixteen passengers, and

on the upper deck there are transverse seats for eighteen passengers. There is a stairway leading from the rear platform of the lower deck to the upper deck. Said stairway has a screen extending from the top to the bottom.

"The space used for advertising purposes on the vehicles of the plaintiff herein, is leased to the Railway Advertising Company, under an agreement dated May 11, 1907, from which the plaintiff herein receives the sum of $10,000 per annum, plus the sum of $200 per bus for exterior advertising. There was an agreement dated May 15, 1905, relating to interior advertising."

Advertising signs of various colors are upon the stairs of the elevated railways, in places on the elevated structures in the city of New York, and on the walls of the underground stations of the subway railroad company.

The advertising signs on plaintiff's coaches have no relation to their operation or to the physical comfort, convenience or health of the passengers or the public, and are merely an incident to the use of the stages in the operation of the franchise belonging to it for the transportation of passengers.

The findings of fact are very descriptive as to the size and character of the signs used. There are two, 13 feet by 2 feet 7 inches; another, 2 by 6½ feet; another, 4 by 2 feet; another, 8 feet by 20 inches; another, 2 feet 4 inches square; and others, 2 feet in length. And the signs or the pictures painted on them were in pink, blue, black, bright yellow, drab and red.

It was concluded from the facts found that the advertisements were not a nuisance; could not be judicially condemned on æsthetic grounds; that the health, safety or comfort of passengers and the public are not injured by them; that plaintiff failed to prove that their display was a necessary incident to the operation of the stages; that by its franchise it did not acquire the right to display advertisements for hire, and that such display was

*ultra vires,* being neither incidental to nor implied by the powers conferred by plaintiff's charter or by law. It was further concluded that the streets of New York could only be used for street purposes and that the display of advertising signs by plaintiff was not a street use.

The Appellate Division affirmed the judgment. The court said: "The complaint was properly dismissed and the judgment would be affirmed without opinion were it not for the fact that we do not concur in the reasons assigned by the learned justice at Special Term for making this disposition of the case. From the facts proved, and the findings made, a case is not presented to a court of equity which calls for the exercise of its powers." The court further expressed the view that plaintiff had a right under its charter to operate its stages, but whether it could or not, as an incident to such right, display signs or advertisements must be determined when the question arose and not, as in the pending case, upon a supposition which had for its foundation a mere threat which might never be carried into effect. And the court intimated that it was the concern of the State and not of the city if plaintiff was violating its charter; and further intimated that the advertisements did not violate the ordinance.

The Court of Appeals, however, agreed with the trial court. It reviewed the laws which constituted the charter powers of the Fifth Avenue Transportation Company and the laws by which plaintiff succeeded to the transportation company and its powers, and decided that the franchise of plaintiff "does not expressly include the right to use the public streets mentioned therein for advertising purposes or to carry or maintain exterior advertisements on its stages and the carrying of such advertisements is not a necessary or essential incident to its express franchise rights. Such exterior advertising is in no way related to the carrying of passengers for hire." The court also decided that the city had the power to pass the ordinance

which is in question and that plaintiff offended against its provisions, and, after discussing at some length the powers of the city, among other things, said:

"Fifth Avenue is an important and much-used street. At certain times of the day slow-moving trucks are barred therefrom on account of the congestion in such street. The plaintiff's contract with the advertising company allows the advertisements on its stages to become the conspicuous part of their exterior, and the business of advertising for the purpose of revenue is of such value to the plaintiff that the gross income therefrom exceeds six per cent upon its entire capital stock."

\* \* \* \* \* \* \* \*

"It appears that the right to display garish advertisements in conspicuous places has become a source of large revenue. If the plaintiff can cover the whole or a large part of the exterior of its stages with advertisements for hire, delivery wagons engaged by the owners in their usual business or regular work can rightfully be covered with similar advertisements. Cars and vehicles of many descriptions, although not engaged exclusively in advertising, and thus not incumbering the street exclusively for advertising purposes, may be used for a similar purpose. The extent and detail of such advertisements when left wholly within the control of those contracting therefor would make such stages, wagons or cars a parade or show for the display of advertisements which would clearly tend to produce congestion upon the streets upon which they were driven or propelled. The exaggerated and gaudy display of advertisements by the plaintiff is for the express purpose of attracting and claiming the attention of the people upon the streets through which the stages are propelled."

The court cited *Commonwealth* v. *McCafferty*, 145 Massachusetts, 384, in which an ordinance was sustained which prohibited the placing or carrying on sidewalks,

show-boards, placards or signs for the purpose of there displaying the same. It was said in this case that the tendency and effect of such signs might be to collect crowds and thus interfere with the use of the sidewalks by the public and lead to disorder, and that such a provision applicable to the crowded streets of a populous city was not unreasonable. The Court of Appeals, therefore, concluded that the ordinance of the city of New York was "not wholly arbitrary and unreasonable," and that the plaintiff "had failed to show that the maintenance of such exterior advertisements is within its express franchise rights or that such ordinance prohibiting their maintenance on its stages is not a proper exercise of the authority vested in the city to regulate the business conducted in the streets thereof, and the trial court was, therefore, right in dismissing the plaintiff's complaint."

To this conclusion complainant urges (1) it has a property right to rent space on its stages for advertisements, and the doctrine of *ultra vires* has no application; (2) the ordinance, as construed by the Court of Appeals, deprives plaintiff in error of its property without due process of law, in contravention of the Fourteenth Amendment to the Constitution of the United States; (3) denies to it the equal protection of the laws; (4) impairs the obligation of the contract between plaintiff and the Railway Advertising Company, and that between the State of New York and plaintiff.

To sustain the first proposition plaintiff cites a number of cases which are not in point. It may be that in other jurisdictions it has been decided, construing the charters granted, that under the local laws particular uses of property may be merely incident to its ownership, and not *ultra vires*. A sufficient answer to the cases is that the law is held to be different in New York.

It is surely competent for the courts of New York to construe the laws of the State and decide what powers a

corporation derives under them, or to what uses it may
employ its property necessary for the exercise of those
powers. And the stages used on the streets of the city
transporting passengers is the very exercise of the fran-
chise granted to plaintiff, and is not like the instances of
the cited cases where property was not intimately used in
the exercise of charter rights. The right of property con-
tended for in its full breadth would make property in-
tended for corporate use as absolute as property not so
committed or not limited by charter conditions. And
this, we think, is enough for the decision of the case. No
matter what may be the general rights of corporate prop-
erty, it cannot be contended that a State granting a char-
ter may not strictly define and limit the uses of the prop-
erty necessary to the exercise of the powers granted. And
this is what the Court of Appeals has decided the laws of
New York have done, and that the Fifth Avenue Trans-
portation Company was, and the plaintiff, as the successor
of its rights, is subject to the limitations imposed by those
laws. When plaintiff went beyond the limitations, it be-
came subject to the ordinance as construed by the Court
of Appeals. "General advertising for hire," the court
said, "is by the ordinance prohibited, whether carried on
wagons wholly used for advertising or in connection with
the ordinary or usual business in which wagons are en-
gaged." Plaintiff's stages are therefore brought under
even a broader principle than that of its charter. The
same rule is applied to that as to other wagons and within
the exercise of the police power illustrated in *Common-
wealth* v. *McCafferty, supra.* We concur with the Court
of Appeals, for we cannot say that it was an arbitrary
exercise of such power. The density of the traffic on
Fifth Avenue we might take judicial notice of, but it is
represented to us as a fact by the Court of Appeals, and
we find from the opinion of the trial court and the exhibits
in the record that "the signs advertised in various glaring

colors and appropriate legends divers articles," for example, Duke's Mixture Smoking Tobacco, Bull Durham Smoking Tobacco, and Helmar Turkish Cigarettes.  There were painted figures of animals, men in oriental costume, busts of men and women, all made conspicuous by contrasted coloring.  Describing the signs, the court said: "The colors used—green, dark blue, white, light blue, yellow, drab, and various brilliant shades of red—are contrasted so as to attract attention and are not blended so as to produce a harmonious or artistic effect, and the resulting painting constitutes a disfigurement rather than an ornament."  If plaintiff be right, however the advertisements may be displayed is immaterial.  There can be no limitation of rights by degrees of the grotesque.  If such rights exist in plaintiff they exist in all wagon owners, and there might be such a fantastic panorama on the streets of New York that objection to it could not be said to have prompting only in an exaggerated æsthetic sense.  That rights may not be pushed to such extremes does not help plaintiff.  Its rights are not greater because others may not exercise theirs.

This discussion of plaintiff's first contention answers in effect its other contentions.  Necessarily, if plaintiff had no right under its charter to use its stages for advertising purposes, or if the ordinance of the city was a proper exercise of the police power, plaintiff was not deprived of its property without due process of law, which is the basis of its second contention.

We pass, therefore, to the third and fourth contentions. The third contention is that the ordinance denies plaintiff the equal protection of the laws, and to support the contention it is urged that "no advertising wagons are allowed in the streets, but 'ordinary business wagons' when 'engaged in the usual business or work of the owner, and not used merely or mainly for advertising,' are permitted to exhibit 'business notices.' "  It is argued that the ordi-

nance "thus creates a favored sub-class of vehicles which are permitted to display advertisements." In view of the power of the State and the city acting with the authority of the State, to classify the objects of legislation, we will not discuss the contention. The distinction between business wagons and those used for advertising purposes has a proper relation to the purpose of the ordinance and is not an illegal discrimination. The same comment may be made as to the charge that the ordinance discriminates between two classes of passenger carriers having charter rights to use the streets. As an instance of this charge plaintiff adduces the findings of the trial court that advertising is allowed on the stairs of the elevated railways and on elevated structures. This difference, too, is within the power of classification which the city possesses.

The fourth and last contention of plaintiff is that the ordinance impairs the obligations of the contract between plaintiff and the Railway Advertising Company and the contract between it and the State of New York.

This contention was made in the trial court, as follows: "Any law or ordinance which prevents the Fifth Avenue Coach Company, the plaintiff herein, from displaying advertisements on the exterior of its vehicles, will impair the obligation of plaintiff's contract with the State."

It is doubtful if the point was properly raised in the courts below, but granting that it was, there are obvious answers to it. At the time of the contract of plaintiff with the Advertising Company there existed an ordinance almost identical in terms with that in controversy, and, besides, the contract was necessarily subject to the charter of plaintiff. And if we should exercise the right to construe the charter as a contract with the State we should be unable to discern in it a right in plaintiff to use its stages for advertising purposes in the manner shown by this record.

*Judgment affirmed.*