## HUNTINGTON *v.* SAVINGS BANK.

1. A corporation created by statute can exercise no powers and has no rights, except such as are expressly given or necessarily implied.
2. The act of Congress approved May 24, 1870 (16 Stat. 137), incorporating the National Savings Bank of the District of Columbia, does not authorize the creation of any corporate stock or capital. The profits of the institution, after deducting the necessary expenses of conducting it, inure wholly to the benefit of the depositors, in dividends, or in a reserved surplus for their greater security.
3. The bond filed pursuant to the eleventh section of that act is in no sense capital owned by the bank or the corporators. It was required solely to secure depositors and creditors.

APPEAL from the Supreme Court of the District of Columbia.

This bill, for an account and a distribution of profits, was filed by Fanny A. Huntington, administratrix, and Frank H. Gassaway, administrator, of William S. Huntington, deceased, against the National Savings Bank of the District of Columbia, a corporation chartered by an act of Congress approved May 24, 1870 (16 Stat. 137), the provisions of which are stated in the opinion of the court.

Shortly after the passage of the act, Huntington, and fifteen

other persons named therein as corporators, met, organized, and elected the officers provided for. A bond in the penal sum of $200,000, conditioned to pay and to satisfy, to every depositor or person entitled, such sum as the party may be entitled to, within thirty days after such deposit shall be demanded, was filed with the clerk of the Supreme Court of the District of Columbia, and approved by one of the judges thereof. No capital was ever paid into the bank by any of the corporators, nor has it ever issued any stock, or divided shares.

The bill alleges that the bank has done a large business, and sustained no considerable losses, and that, therefore, all its profits, and the present large value of its capital stock and franchises, belong to said sixteen corporators; that neither Huntington in his lifetime, nor the complainants since his death, ever received more than about $3,000 of dividends or profits of said bank; that, while other corporators have received larger dividends, the rights of the complainants have not been recognized, but that, on the contrary, the defendant pretends that upon the death of Huntington all the rights in said business and the franchises survived to the other corporators, and that, as expressive of that view, and to injure the complainants, the defendant has, long since the death of Huntington, adopted a by-law to that effect; that the sureties on the bond are sureties of the corporation and not of each other, and that the liability of each and all of them continues until a new bond is demanded and given, as required by law; and that the right of the surviving members to choose the successor of a deceased member is an assumption wholly unsupported by law. The bill then prays for an account of receipts, expenditures, and profits since the organization of the bank, together with the dividends paid to each corporator; and that the franchises, property, and privileges be valued, and the defendant decreed to pay to the complainants one-sixteenth part thereof.

The answer of the defendant alleges that the profits realized were the property of the individuals who organized under the charter, and that they accrued from the personal credit of the several corporators and their attention to the use of the funds deposited with the bank, and not from the employment of any capital; but denies that said alleged profits, capital stock, and

franchises are of great value. It then avers that no division of profits was made among the corporators until after July, 1873, and the death of Huntington; and that the amount so divided was subsequently, in order to meet large losses incurred by reason of the financial panic, refunded by the surviving corporators; but that, in the mean time, the share of the profits due Huntington up to the time of his death, in March, 1872, had been paid to the complainants. It then denies any continuing interest of the complainants in said profits after his death, and alleges that the by-law complained of was not adopted with a view of precluding any rights which had accrued, but for the purpose of defining in the future the relation of the members of the corporation.

The answer further admits that the corporators signing the bond were sureties of the corporation and not of each other; and avers that they did not execute it as corporators, and that it was not capital, nor was its execution by the corporators required by the charter or by-laws, nor was it the consideration of the relations of the parties *inter sese;* and that, if it were, so far as Huntington's estate is concerned, such consideration would have failed, in consequence of the insolvent condition of his estate and its inability to respond in aid of the other corporators against liabilities and claims.

A general replication was filed, but no proofs were taken. The case was heard on the pleadings, and the bill dismissed. The complainants then appealed to this court.

*Mr. Benjamin F. Butler* and *Mr. Joseph H. Bradley* for the appellants.

1. By the provisions of the charter, the company had a capital of $200,000, as security for the repayment of the deposits with interest. Capital is the security for the payment of the debts of a corporation, in whatever form it may be, whether in cash, property, bonds, or notes. It is the fund from which calls upon the stockholders and dividends are to be paid. *Nichols* v. *Tracy*, 1 Sandf. (N. Y.) Ch. 278; *Durar* v. *Insurance Company*, 4 Zab. (N. J.) 171; Angell & Ames, Corp., sects. 157, 556; *The People* v. *Batchelor*, 28 Barb. (N. Y.) 310; *Hightower* v. *Thornton et al.*, 8 Ga. 486.

It was immaterial what that capital was, so long as the secur-

ity was satisfactory to and approved by the Supreme Court of the District. The bond given by Huntington and others was to continue until it should be replaced by some other satisfactory to that court, and is consequently binding on his estate.

2. The by-law passed after his death could have no effect on his rights.

3. If the analogy of a partnership is to be followed, the death of Huntington worked no dissolution of his partnership; for it was in an incorporeal body, to the existence of which there was no limit except the will of Congress.

So long, therefore, as his capital is used and employed, the survivors must account with his representatives for all profits. Collyer, Part. (4th Am. ed.), book 2, c. 1, sects. 129–131; Story, Part., sect. 343 and notes; Carey, Part. 290, 291.

*Mr. Walter S. Cox, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

The bill of the complainants assumes that, as personal representatives of William S. Huntington, deceased, they have an equitable ownership of one-sixteenth part of the franchises, property, and privileges of the defendant corporation, and that, as such representatives, they are entitled to call for an account of the profits made, and to demand payment to them of one-sixteenth part of the value of the franchises and property as well as profits. Whether this assumption is well founded or not, — whether the estate of their intestate has any pecuniary interest in the corporate franchise and property, can be determined only after a careful examination of the defendant's charter. The corporation was created by an act of Congress, approved May 24, 1870, entitled "An Act to incorporate the National Union Savings Bank of the District of Columbia." By that act, George H. Plant, William S. Huntington, and twenty-one other persons named, and their successors, were declared to be a body politic and corporate, under the corporate name mentioned, having succession, capable of suing and being sued, of having a common seal, and generally of doing and performing all things relative to the object of the institution lawful for any individual or body politic or corporate to do.

The object of the institution was declared in the fourth sec-

tion. By that it was enacted that "the corporation may receive on deposit, for the use and benefit of the depositors, all sums of money offered for that purpose," and invest the same in the manner therein described. The section then added : "The income or interest of all deposits shall be divided among the depositors, or their legal representatives, according to the terms of interest stipulated."

The eighth section required an annual report to be made to Congress, specifying the number of depositors, total number of deposits, amount invested in bank stock and deposited in bank on interest, amount secured by bank stock, amount invested in public funds, loans on mortgage of real estate, loans on personal securities, amount of cash on hand, total dividends of the year, and annual expenses of the institution; all of which to be certified and sworn to by the treasurer and five managers, or more.

The ninth section required the books of the corporation, at all times during their hours of business, to be kept open for the inspection and examination of the comptroller of the currency or depositors.

The eleventh section enacted that the corporation should file with the clerk of the Supreme Court of the District a bond with security, in the penal sum of $200,000, approved by one of the judges of the court, conditioned to pay to every depositor or person entitled such sum as the party may be entitled to, within thirty days after such deposit shall be demanded; which bond might be sued by any depositor or person entitled, after such demand and refusal to pay.

Other provisions of the act require the officers of the corporation to give security and take an oath for the faithful discharge of their duties; and forbid any officer, director, or committee charged with the duty of investing the deposits to borrow any portion thereof, or use the same, except in paying the expenses of the corporation.

These are all the provisions that have any relation to the question we are considering. It is to be noticed that the charter does not authorize the creation of any corporate stock or capital, nor does it contemplate the existence of any other than the deposits which may be made. The corporators are not

required to contribute any thing. There are, of. consequence, no shareholders. Not a word is said in the instrument respecting any dividends of capital, or even of profits, to others than the depositors. Certainly, no express authority is given to make dividends. to the corporators; and we discover nothing from which such authority can be inferred. The dividends of which a return is required by the eighth section to be made to Congress are evidently those spoken of in the fourth, as made to the depositors. The rules to be applied to the construction of corporate grants are well known. A corporation created by statute can exercise no powers and has no rights except such as are expressly given or necessarily implied. In this case, so far from there being an implication of any pecuniary interest in the corporators, or any duty due to them from the corporation, the contrary is expressly declared. The institution having no capital stock, whatever liability, if. any, there may be to the corporators must be satisfied out of the profits made from the deposits. But the charter, when conferring the power to receive money on deposit, limits it to receiving for " the use and benefit of the depositors," and directs how it may be invested. It further declares that " the income or interest of all deposits shall be divided among the depositors or their legal representatives," not among the depositors and the corporators. It is true, the income or interest is to be divided among the depositors, " according to the terms of interest stipulated; " implying, perhaps, that the dividend may be less than the interest received by the corporation; but there is nothing in the charter that indicates the excess is for the benefit of the corporators. It is to provide for the necessary expenses of the institution authorized to be paid, and perhaps to raise a contingent fund to meet possible losses.

During the argument, our attention was called to the eleventh section of the charter, which requires the corporation to file a bond with security, in the penal sum of $200,000, conditioned to pay and satisfy depositors; and it is argued that this bond may be considered as capital contributed by the corporators named in the charter: and hence we are asked to infer that they have a pecuniary interest which entitles them to a division of the profits, as also to a share of the capital, and to a benefi-

cial interest in the franchise. If this were so, the complainants'
bill does not aver that William S Huntington was one of the
obligors in the bond, or that he was even in that mode one of
the contributors to capital stock. But, if it be assumed that
he was, it would still be true that the bond was in no sense
capital owned by the corporation or by the corporators. It was
required by the charter solely for the security of the depositors
or creditors of the institution. The corporation was required
to give the bond with security, but what the security should be
was left to the approval of a judge of the Supreme Court of the
District. There was no requirement that the corporators should
sign the bond, much less that all of them should. The security
might have been given by strangers exclusively, or by one or
more of the corporators. If given by the latter, the obligors
would have been bound, not as corporators, but as any other
persons having no connection with the institution.

We think the complainants have mistaken the nature of the
corporation. It is not a commercial partnership, nor is it an
artificial being the members of which have property interests in
it, nor is it strictly eleemosynary. Its purpose is rather to furnish
a safe depositary for the money of those members of the commu-
nity disposed to intrust their property to its keeping. It is some-
what of the nature of such corporations as church-wardens for the
conservation of the goods of a parish, the college of surgeons for
the promotion of medical science, or the society of antiquaries for
the advancement of the study of antiquities. Its purpose is a
public advantage, without any interest in its members. The title
of the act incorporating it indicates its purpose; namely, an act
to incorporate a national savings bank: and the only powers
given to it were those we have mentioned, — powers necessary to
carry out the only avowed purpose, which was to enable it to
receive deposits for the use and benefit of depositors, dividing
the income or interest of all deposits among its depositors or
their legal representatives. It is, like many other savings insti-
tutions incorporated in England and in this country during the
last sixty years, intended only for provident investment, in
which the management and supervision are entirely out of the
hands of the parties whose money is at stake, and which are
*quasi* benevolent and most useful, because they hold out no

encouragement to speculative dealing or commercial trading. This was the original idea of savings banks. Scratchley's Treatise on Savings Banks, *passim;* Grant's Law of Bankers, 571, where, in defining savings banks, it is said the bank derives no benefit whatever from any deposit, or the produce thereof. Such are savings banks in England, under the statutes of 9 Geo. IV., c. 92, sect. 2, and 26 & 27 Vict., c. 87. Very many such exist in this country. Among the earliest are some in Massachusetts, organized under a general law passed in 1834, which contained a provision like the one in the act of Congress, that the income or profit of all deposits shall be divided among the depositors, with just deduction of reasonable expenses. They exist also in New York, Pennsylvania, Maine, Connecticut, and other States. Indeed, until recently, the primary idea of a savings bank has been, that it is an institution in the hands of disinterested persons, the profits of which, after deducting the necessary expenses of conducting the business, inure wholly to the benefit of the depositors, in dividends, or in a reserved surplus for their greater security. Such, very plainly, is the defendant corporation in this case. The complainants have, therefore, no pecuniary interest in it, and no right to the relief they ask.

*Decree affirmed.*