THE MORRISTOWN INSTITUTION FOR SAVINGS.

*v.*

JONATHAN W. ROBERTS et al.

In the voluntary winding up of an incorporated savings bank, under the direction of the court, only those who were depositors when the proceedings were instituted are entitled to share in the surplus.

Bill for relief. On final hearing.

*Mr. Alfred Mills,* for complainant.

*Mr. Theo. Little* and *Mr. S. H. Little,* for the two classes of depositors.

THE CHANCELLOR.

This suit is brought to get instructions from the court as to the disposition to be made of the surplus held by the complainant, a savings institution which has gone into voluntry liquidation. Some of the defendants are the representatives of two classes of persons, viz.: those who were depositors when the

proceedings for winding up the institution were instituted and those who before that time had been depositors, but had withdrawn their deposits and were not such then. The attorney-general is also a party in behalf of the state.

The institution was incorporated by special charter in 1867. *P. L. of 1867 p. 797.* By the fourth section of the charter it was authorized to receive as deposits all sums of money which might be offered for that purpose and to invest them in such amounts and at such times and on such terms as its by-laws might prescribe; and it was authorized to execute all trusts of every description relating to the care, safe keeping and investment of moneys intrusted to it by any person or persons, by will or otherwise, or by the order of any court. By the fifth section it was provided that it should be the duty of the managers from time to time to regulate the rate of interest to be allowed and paid to depositors, so that they might receive, as nearly as could be, a ratable proportion of the profits after deducting therefrom all necessary expenses and retaining a reasonable surplus or contingent fund; and that such rate of interest might be so regulated by the managers that the interest allowed to such depositors as should have one thousand dollars or more on deposit should be one per centum per annum less than the interest allowed to other depositors. By the sixth section it was provided that no emolument or compensation should be received, either directly or indirectly, by the president or other managers for their services. When the institution took the proceedings (they were taken in this court) for winding up its business it had a surplus of $20,342.19. The number of persons who were depositors at that time is sixteen hundred and sixty-five, and the number of all those who have been at any time depositors is fifty-seven hundred and six.

The right to ask for instructions and directions in this case is based upon the assumption that the relation of trustee and *cestui que trust* exists between the managers and depositors. The doctrine that such relation does. exist between such parties, laid down in the *Newark Savings Institution Case, 1 Stew. Eq. 552,* and upon which the judicial action taken in that matter

was founded, has not been disapproved by the court of last
resort, although the action based upon it in that instance was
not sanctioned. *Dodd* v. *Una, 13 Stew. Eq. 672.* I think it
may safely be assumed that the relation exists at least to such
an extent as to authorize the parties to call upon this court for
directions where necessary in reference to the distribution of the
assets of a solvent savings bank upon the winding up of the
institution. The law of 1878 provides for the case of insolv-
ency. This court would assuredly take jurisdiction of this
matter at the suit of a depositor.

In *Cramer* v. *Bird, L. R. (6 Eq.) 143,* where a corporation
(a company authorized to make and maintain a railway and
harbor) lawfully transferred its undertaking to another com-
pany in pursuance of an act of parliament, which recited that
the powers of the first-mentioned company were extinct, and
then authorized the transfer, and the directors had a balance of
several thousand pounds in their hands, it was held that a bill
by a stockholder to compel distribution of the balance would
lie. Again, the bill in this case is in the nature of an inter-
pleader. It being impossible to bring in all the parties inter-
ested, some of each class have been made defendants and they
have appeared. The managers have no claim to the surplus.
Their trust is a naked trust. The charter expressly declares
that they shall receive no emolument or compensation either
directly or indirectly. It provides that the depositors shall receive
as interest their ratable proportions of the profits after deduct-
ing necessary expenses and retaining a reasonable surplus or
contingent fund. Neither the bank nor the managers could de-
rive any benefit from any deposit or the produce thereof. *Grant
Bank. 614; Huntington* v. *Savings Bank, 96 U. S. 388.* The
state has no right to the surplus. Nor have those who were
depositors, but withdrew their deposits before the institution of
the winding-up proceedings, any claim to it. The surplus was
created and maintained for the protection of the depositors from
loss by reason of the depreciation of securities &c. &c., to pro-
tect them against the casualties and contingencies to which the
funds of the institution were liable, and which might impair

their deposits. It stood as such indemnity for the depositors who were such for the time being. So long as a person continued to be a depositor, so long it stood for his protection, and when, by withdrawing his funds, he ceased to be a depositor, his interest in it was at an end. He thus relinquished his interest in it, and as he would not be liable to contribute to any loss to which the remaining depositors might be subjected, so, on the other hand, he would not be entitled to any participation in the surplus.

The thirty-second section of the act concerning savings banks (*P. L. of 1876 p. 352*) makes it the duty of the managers of every corporation subject to that act to regulate the rate of interest or dividends, not to exceed six per centum per annum, upon the deposits, in such manner that depositors shall receive, as nearly as may be, all the profits of the corporation, after deducting necessary expenses and reserving such amount as the managers may deem expedient as a surplus fund for the security of depositors, which, to the amount of fifteen per centum of their deposits, the managers are thereby authorized to accumulate gradually and to hold, to meet any contingency or loss in the business of the corporation from the depreciation of its securities or otherwise. It provides also that it shall be the duty of the managers of any such corporation, the surplus of which amounts to fifteen per centum of its deposits, to divide equally, at least once in three years, the accumulation beyond the authorized surplus as an extra dividend to depositors in excess of the regular dividends authorized by the act. This latter provision is a legislative recognition of the principle that the surplus which a savings institution has, when wound up, belongs to those who are the depositors at that time. Those depositors being the only persons interested in the assets of the corporation at the time of winding up are entitled to a ratable distribution among themselves, according to the amount of their respective deposits, of those assets, after paying the debts of the corporation to other creditors. In *Hannon* v. *Williams, 7 Stew. Eq. 255,* it was said by the court of errors and appeals that in prosperity the depositors of a savings bank are the stockholders among

whom profits are divided. The expenses of this suit will be paid out of the fund.