**COLSTON v. BURNET, Commissioner of Internal Revenue.**

**No. 5489.**

Court of Appeals of the District of Columbia.

Argued May 5, 1932.
Decided May 31, 1932.

868

Geo. E. H. Goodner, Jerry A. Mathews, and Josephus C. Trimble, all of Washington, D. C., for appellant.

G. A. Youngquist, Asst. Atty. Gen., and Carlton Fox, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is an appeal from a decision of the Board of Tax Appeals, and involves loss and expense items deducted by petitioner in 1924–25. The item involved in 1924 was a $20,000 loss claimed to have been sustained on account of a "short" sale of stock made by petitioner in that year. The two items in 1925 were: First, the payment by petitioner of taxes assessed against real property belonging to his wife and interest on mortgage indebtedness secured on the same property; and, second, the deduction of $108 as interest paid by petitioner to an insurance company on account of a "policy" loan. The commissioner and the Board of Tax Appeals disallowed all of the items. There were no findings of fact by the board. We have therefore had recourse to the evidence, and this consists almost entirely of petitioner's oral testimony.

In the opinion filed by the board, petitioner's evidence with relation to the stock-transaction loss is summarized as follows: "The whole arrangement is described as growing out of the petitioner's inadvertent failure in April, 1924, to carry out his wife's instructions to order a broker to buy the shares (of stock) at 83 after he had ineffectively ordered the purchase at 82½. His wife's disappointment a week or ten days later, when he told her he had omitted to order the purchase at 83, led him to tell her he would sell the shares to her at 83. What the market was then is not stated. He did not own the shares, made no effort to purchase them, his wife made no demand or payment for them, and it does not appear that it was seriously contemplated, that a delivery by him or payment by her should be made. In 'November or December,' 1924, when the stock was quoted at 123, he says he offered to deliver the stock or pay her the difference between the alleged price of 83 and the then market price of 123. He then made the debit and credit on their accounts."

We think this is a fair summary of petitioner's evidence and the inferences which flow from it. Stated in petitioner's own language, the transaction in relation to the stock was, "I gave her a call, and she gave me a put." As we understand it, "put" is a term used by speculators in the stock market to designate a contract by which one of the parties thereto purchases at a fixed sum a privilege to deliver certain stock or grain within a definite period of time, and "call" is the right to demand a certain amount of stock or grain at a fixed price at or within the certain time agreed on. In either case the element of time is of the essence, and ordinarily the transaction is closed as of the agreed time by payment of the difference in value, if any, to the holder of the call. An examination of petitioner's evidence convinces us, however, that the transaction between himself and his wife was wholly without reference to time, and equally we are convinced actual delivery of the shares of stock in question was never contemplated. Admittedly the contract was not in writing, and no consideration passed. Since the transaction occurred in Ohio, the laws of that state govern, and section 8384 of the Ohio General Code specifically makes invalid a contract to sell goods or choses in action of a greater value than $2,500 unless the buyer "give something in earnest to bind the contract, or in part payment, or. unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf." And, as we have already remarked, it is not only not contended that there was either memorandum in writing or consideration, but it is admitted there was neither. We think the shares of stock which petitioner contracted to sell and which his wife contracted to buy are choses in action, or in the nature of choses in action, within the terms of this statute (see

Allen-West Commission Co. v. Grumbles [C. C. A.] 129 F. 287, 290; Hutchins v. State Bank, 12 Metc. [Mass.] 421, 426; Cooper v. Canal Co., 6 N. C. 195; Lipscomb v. Condon, 56 W. Va. 416, 49 S. E. 392, 67 L. R. A. 670, 107 Am. St. Rep. 938; Illinois-Indiana Fair Ass'n v. Phillips, 241 Ill. App. 454, 461), and from this it would follow that on the admitted facts the transaction between petitioner and his wife was unenforceable and illegal, and therefore the subsequent payment to her amounted to no more than a gift. Viewed in this light, we reach the same conclusion the board reached, namely, that the payment of the $20,000 by petitioner to his wife arose out of a generous disposition rather than a contractual obligation.

■ But if there is any doubt as to the applicability of the statute quoted to the transaction as testified to by petitioner, there is still another reason why the payment by him to her should not be regarded as a deductible loss under the revenue statutes. As we have already stated, it is impossible to read petitioner's evidence and reach the conclusion that an actual sale and delivery of the shares of stock was ever intended. Giving full effect to petitioner's own evidence that when the transaction was closed he said to his wife: "If you think it (the stock) is going much higher, I will get it and we will close the contract. If not, I will pay the difference," when considered in connection with the evidence of the entire transaction leaves no doubt in our minds that the venture was entirely speculative in its character, was in the nature of a wager, and was therefore void and unenforceable. Irwin v. Williar, 110 U. S. 499, 508, 4 S. Ct. 160, 28 L. Ed. 225. Petitioner nowhere says or claims that there was a mutual intention to purchase outright the shares of stock, and the whole transaction in its inception negatives such a conclusion. Nor does he say anywhere that he at any time intended to purchase the shares of stock and make delivery of them or that his wife expected or intended or desired that result. "But if the real intent be merely to speculate on the rise and fall of prices, and the goods are not to be delivered, but one party is to pay to the other the difference between the contract price and the market price of the goods at the date fixed for executing the contract, then the contract partakes of the nature of a wager, and is void." Kahn v. Walton, 46 Ohio St. 195, 20 N. E. 203, 207. In these circumstances we are impelled to decide that the board's conclusion in respect to this item is manifestly correct.

■ The next item, as we have seen, is as to deductions made on account of taxes and interest. Payments on this account were made under these circumstances. Petitioner went to Cleveland, Ohio, in 1922, and was married in December, 1923. Prior to his marriage he arranged to purchase a home, and about that time paid down $8,000, but took neither a deed nor contract for the property. After the consummation of his marriage, he caused the seller to convey the house to his wife, the deed to her, as it appears to us from his testimony, being made subject to a $25,000 first mortgage, and his wife, as the holder of the legal title to the property, executed to the seller a second mortgage of $20,000. Petitioner indorsed the second-mortgage notes. Subsequently he paid approximately $2,500 on account of taxes and interest on the first and second mortgages. The commissioner and the board disallowed these items, and found that the property was owned by petitioner's wife, and that consequently the payments were not made by petitioner on his own obligation but merely for the voluntary discharge of the obligation of another. Petitioner, on the other hand, insists that he is entitled to a deduction from his income by reason of his duty as husband to support his family and also because under the Ohio law he has certain rights of dower (in most states called curtesy) in his wife's real estate. Added to this, if we correctly understand petitioner's contention before the board, as shown in his evidence, he claims to hold an equitable title to the property growing out of the initial payment by him of $8,000, and out of this he deduces an obligation on him to pay the taxes and the interest.

We are unable to find any substance in any of these contentions, or to perceive upon what legal theory petitioner can claim to have either a legal or equitable title to the property. The verbal agreement to purchase the dwelling was in contemplation of marriage. The initial payment was made in advance of marriage, but no deed was taken because obviously petitioner intended that the deed when taken should be made to his wife. It was an ordinary deed of sale directly to her and vested in her complete legal title to the property. Petitioner, as we know, is a man of high character and admitted probity, and we have accepted his testimony as reflecting the true character of the transaction; but even in that view we can find nothing in it contrary to the facts stated above, or to the presumption arising out of the nature of the conveyance which he caused to be made to

his wife. Taken together, we are unable to reach any other decision than that he intended a gift to his wife of the full and absolute title to the property, though doubtless with the purpose, as between them, of discharging the incumbrance so that the dwelling house should eventually be hers discharged of debt, and if that be true, it is not necessary to cite authority to the effect that the voluntary payment by him of her taxes or of interest primarily due by her should not entitle him to a deduction therefor under the revenue laws.

■ This leaves only the small item of $108 claimed to have been paid in 1925 on a policy loan. There is no question that the money was paid, and paid on that account. Petitioner in his oral evidence said, "I paid $108 to the Massachusetts Mutual Life Insurance Co. on a policy loan," and he exhibited two checks for $54 each in evidence of this fact. If this were all, we would have no difficulty in reaching the conclusion that the loan on which this interest was paid was petitioner's own indebtedness, but in his amended petition before the board he stated that this obligation was incurred "by a contract with his wife valid and subsisting under the laws of Ohio," and that this contract obligated him to pay the interest, and if nothing more appeared, this statement, uncontradicted, might very well be regarded as conclusive of the subject; but this item is one of three items, the other two being the interest payments on the mortgage on the dwelling house, which we have already discussed. We think it fair, therefore, to assume that petitioner intended to buttress his obligation to pay the interest on the insurance company loan on the same ground on which he had placed his obligation to pay the interest on the dwelling house mortgage, that is to say, because of his obligation of support of his wife. If this is not the real explanation, petitioner cannot complain because the facts were misunderstood, for opportunity was extended him to explain the transaction, and no more than appears above was vouchsafed. If the loan from the insurance company was an indebtedness of his wife's and was paid by him because of the relationship of husband and wife, we know of no law under which he could claim that the payment was obligatory. If it was, as we think it was, an ordinary payment made by him for his wife without binding legal obligation, it would, of course, be voluntary. The board found that the evidence sustained that theory, and, in the lack of evidence to the contrary, we find ourselves obliged to reach the same conclusion.

Affirmed.