POWERS et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 2811.

Circuit Court of Appeals, First Circuit.

Jan. 9, 1934.

Melville F. Weston, of Boston, Mass. (Stanley R. Miller and Powers & Hall, all of Boston, Mass., on the brief), for petitioners.

John MacC. Hudson, Sp. Asst. to Atty. Gen. (Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Before WILSON and MORTON, Circuit Judges, and HALE, District Judge.

MORTON, Circuit Judge.

The question is whether the public trustees of the Boston Elevated Railway Company were subject to a federal income tax on their official salaries for the years 1926–29. The Commissioner held that they were, and the Board of Tax Appeals affirmed his ruling. The facts are stated in the findings and opinion of the Board. 26 B. T. A. 1381. There are differences between the cases of different petitioners as to the tax year, or years, which are involved; but these differences do not affect the legal questions before us.

The unusual arrangement under which the commonwealth of Massachusetts took over the Boston Elevated Railway Company has been the subject of much judicial consideration. See Opinion of the Justices, 231 Mass. 603, 122 N. E. 763; Boston v. Treasurer, 237 Mass. 403, 130 N. E. 390; Opinion of the Justices, 261 Mass. 523, 159 N. E. 55; Boston v. Jackson, 260 U. S. 309, 43 S. Ct. 129, 67 L. Ed. 274. It was, in substance, that the railway company turned over its property to the commonwealth for a term of years in return for guaranteed dividends on its stock and interest on its obligations; the railway continued to be operated under the company's charter, but by public officials, instead of by corporate officers. Under the statute (Sp. Acts Mass. 1918, c. 159), the Governor appointed, with the advice and consent of the executive counsel, five persons called "trustees" to act as managers of the railway. Their term of office was ten years; they were sworn to the faithful discharge of their duties; they were removable by the Governor

and council; they were each paid $5,000 per year as salary; they had final power to fix rates, exercising as to this company powers otherwise vested in the Public Service Commission; and they had authority, under certain circumstances, to declare deficits, which they apportioned among the communities served, and which were then included in the tax levy. The petitioners and their cotrustees were duly appointed and operated the railway during the years here in question, viz.: 1926, 1927, 1928, and 1929.

The statutes involved are the Revenue Acts of 1926 and 1928 (44 Stat. 9; 45 Stat. 791); and the Treasury regulations made under them. Regulations 69, art. 88, Revenue Act of 1926; regulations 74, art. 643, Revenue Act of 1928. The controversy really arises out of the Treasury regulation under the act of 1926, which was, in substance, repeated under the later act. It is as follows: "Art. 88. Compensation of State officers and employees. Compensation paid to its officers and employees by a State or political subdivision thereof for services rendered in connection with the exercise of an essential governmental function of the State or political subdivision, including fees received by notaries public commissioned by States and the commissions of receivers appointed by State courts, is not taxable. Compensation received for services rendered to a State or political sub-division thereof is included in gross income unless (a) the person received such compensation as an officer or employee of a State or political subdivision, and (b) the services are rendered in connection with the exercise of an essential governmental function."

Two basic questions are presented: (1) Were the petitioners entitled to exemption under the regulation? (2) If not, is the regulation, in so far as it denies them exemption, valid under established law? As to (1), the regulation exempts from the federal income tax salaries of state officers or employees, if paid "for services rendered in connection with the exercise of an essential governmental function of the State." It is clear that the petitioners are public officers of the state. They hold offices created by a statute; they are appointed by the Governor with the advice and consent of the council; they may be removed by him with the consent of the council; they are sworn to the faithful discharge of their duties; they exercise on behalf of the commonwealth final power over rates of fare, being pro tanto a Public Service Commission; they have power to declare

and apportion deficits which are thereupon collected by taxation. The position which they hold has practically all the important characteristics of public office. Metcalf & Eddy v. Mitchell, Adm'x, 269 U. S. 514, 46 S. Ct. 172, 70 L. Ed. 384; Commissioner v. Ogden, 62 F.(2d) 334 (C. C. A. 1). While the statute (section 1) says that for certain purposes they "shall not be considered public officers," it seems to us that for present purposes they are so. They have been so referred to by the Supreme Judicial Court (Opinion of the Justices, 231 Mass. 603, 122 N. E. 763), and they have been held to be such by the Board of Tax Appeals in the case of Winthrop Coffin v. Commissioner, 12 B. T. A. 702, a decision which we do not understand has been overruled on that point by that in the case before us.

█ The Board of Tax Appeals, agreeing that the petitioners were "public officials, as that term has been liberally interpreted," held that, as "they were not exercising essential governmental functions in the performance of their duties," they did not bring themselves within the exemption permitted by the regulation; that the regulation was valid according to its terms; and that the salaries were, therefore, taxable. It may be conceded that, judging by classical standards, the operation of a street railway is not an essential function of government (Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; South Carolina v. United States, 199 U. S. 437, 26 S. Ct. 110, 59 L. Ed. 261, 4 Ann. Cas. 737), although how long such standards of governmental function will be valid, in view of the present tendency to extend the field of governmental activities, is perhaps uncertain. But these trustees have much greater power than merely to operate a street railway. They have the power, as has been pointed out, to fix rates, and to declare deficits which upon their decision were collected by taxation. Both these powers are by any standard essentially governmental. If a state officer exercises any powers of that character, his entire salary is, in our opinion, exempt by the regulation. We do not think it is the intention of the regulation that there should be an apportionment of exemption, that a certain part of the salary should be, more or less arbitrarily, allocated to the service of governmental character and exempted, while the rest of the salary is taxed—and no such contention is made. The salaries in question were therefore exempt under the regulations.

█ As to (2): On broader grounds, also, we are of the opinion that these salaries were not taxable. It has long been established that, in our curious dual government, neither sovereign could tax the pay of officers of the other. Dobbins v. Commissioners of Erie County, 16 Pet. 435, 10 L. Ed. 1022; Buffington v. Day, 11 Wall. 113, 20 L. Ed. 122; Metcalf & Eddy v. Mitchell, Adm'x, 269 U. S. 514, 46 S. Ct. 172, 70 L. Ed. 384. In the case last cited, it was said: "It is on this principle that, as we have seen, any taxation by one government *of the salary of an officer of the other * * ** is prohibited." (Italics supplied.) Stone, J., page 524 of 269 U. S., 46 S. Ct. 172, 175. We are aware of no decision which holds that one sovereign may tax the salary of a *public officer* of the other, nor of any precedent for such discrimination in exemption as is set up by the regulation. No such ground of discrimination was suggested in the Metcalf & Eddy Case, supra, although it was open on the facts, the plaintiff being a waterworks engineer employed under contract by a public body. In Massachusetts, ownership and operation of waterworks by the public is not regarded as a governmental function. Lynch v. Springfield, 174 Mass. 430, 54 N. E. 871. In the Metcalf & Eddy case the government waived its appeal from the ruling of the District Court (Metcalf v. Mitchell, 299 F. 812), that the salaries which the plaintiffs received as chief engineer of the Kennebec water district, a political subdivision of Maine, and as a member of the North Shore sanitary district, a political subdivision of Illinois, were exempt from federal taxation, and in effect assented that such exemption was correct. The decisions relied upon by the government do not touch the question under discussion. They deal with the taxability of different kinds of commerce and industry —something quite different from the taxability of the salaries of state officers.

As a practical matter, the test adopted in the Treasury regulation opens a wide door for controversy, especially in view of the extension of government into new fields. Is it open to the states to tax the salaries of all federal officers except those employed on classical governmental functions? And vice versa? We do not think so.

That the salaries of the trustees were paid in the first instance by the railway company is not important. Fees of deputy sheriffs, of public administrators, of deputy marshals, of notaries public, and of many other officials of the federal or state governments, are not paid from the public treasury, but are nevertheless recognized as exempt from taxation by the

other government. Moreover, during and at the close of the period under discussion, the railway company was heavily indebted to the commonwealth for operating deficits which had been collected out of taxation. The salaries increased the deficits, and may well be regarded as having been paid by the public.

The decision of the Board of Tax Appeals is reversed, and the case is remanded to that Board for further proceedings not inconsistent with this opinion.