## RUDOLPH WURLITZER CO. v. COMMISSIONER OF INTERNAL REVENUE.

## WURLITZER GRAND PIANO CO. v. SAME.
### Nos. 6793, 6794.

Circuit Court of Appeals, Sixth Circuit.
Jan. 16, 1936.

972

SIMONS, Circuit Judge, dissenting.

———————◆————

Laurence Graves, of Washington, D. C. (Ike Lanier and Oscar Stoehr, both of Cincinnati, Ohio, on the brief), for petitioners.

J. M. Hudson, of Washington, D. C. (Frank J. Wideman, Sewall Key, and Edward H. Hammond, all of Washington, D. C., on the brief), for respondent.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

These cases arise upon petitions to review orders of the United States Board of Tax Appeals sustaining the Commissioner's determination of deficiencies in income tax against the Wurlitzer Grand Piano Company for the fiscal year ended March 31, 1930, and against the Rudolph Wurlitzer Company for the fiscal year ended March 31, 1931. The identical legal question is presented, namely whether the preferred stock of the Wurlitzer Grand Piano Company, an Illinois corporation, constitutes nonvoting stock within the meaning of section 141 (d) of the Revenue Act of 1928, 45 Stat. 831,[1] title 26, U.S.C.A. § 2141 (d) [now section 141 (d) note]. The decision of this question determines whether the Wurlitzer Grand Piano Company was affiliated with the Rudolph Wurlitzer Company, and whether the companies were entitled to make a consolidated return for the years in question. The Board found that it was not affiliated. 29 B.T.A. 443.

The facts were stipulated, and so far as material, are as follows:

During each of these fiscal years, the entire common stock of the Wurlitzer Grand Piano Company, consisting of 5,000 shares, was owned by Western Industries Corporation, a Delaware corporation, which in turn was owned by the Rudolph Wurlitzer Company. The Commissioner determined that Western Industries Corporation was affiliated with the Rudolph Wurlitzer Company.

The Wurlitzer Grand Piano Company had purchased and retired, prior to March 31, 1928, 4,000 shares of its 5,000 shares of outstanding preferred stock. Of the remaining 1,000 shares, 322 shares were owned by Western Industries Corporation, and the remaining 678 shares were owned by others.

The articles of incorporation of the Wurlitzer Grand Piano Company authorized it to issue preferred nonvoting stock. The preferred stock certificates provided that "The Preferred Stock shall have no voting power, except that if said dividends shall not be paid within one year after the expiration of any fiscal year, then said Preferred Stock shall be by said fact enfranchised. * * *" Dividends were regularly declared and paid on all such preferred stock during the life of the corporation. Since this stock is limited and preferred as to dividends, if it also is nonvoting stock, the orders of the Board of Tax Appeals must be reversed. If it is voting stock, the orders are correct, for in that case, within the defini-

---

[1] Section 141(d):

"(d) Definition of 'Affiliated Group.' As used in this section an 'affiliated group' means one or more chains of corporations connected through stock ownership with a common parent corporation if—

"(1) At least 95 per centum of the stock of each of the corporations (except the common parent corporation) is owned directly by one or more of the other corporations; and

"(2) The common parent corporation owns directly at least 95 per centum of the stock of at least one of the other corporations.

"As used in this subsection the term 'stock' does not include nonvoting stock which is limited and preferred as to dividends."

tion of title 26, § 2141 (d), supra, less than 95 per cent. thereof was owned by the organization claimed to be the parent, and affiliation did not exist. The Board based its decision upon the constitution, statutes and judicial decisions of Illinois. The constitutional provision reads as follows:

"The general assembly shall provide, by law, that in all elections for directors or managers of incorporated companies, every stockholder shall have the right to vote, in person or by proxy, for the number of shares of stock owned by him, for as many persons as there are directors or managers to be elected, or to cumulate said shares, and give one candidate as many votes as the number of directors multiplied by the number of his shares of stock shall equal, or to distribute them on the same principle among as many candidates as he shall think fit; and such directors or managers shall not be elected in any other manner." Article 11, § 3.

Pursuant to this constitutional provision, the Legislature of Illinois enacted statutes defining the powers, rights and privileges of corporations and the methods of electing officers and of adopting by-laws. § 18 of the General Corporation Act (as amended in 1931) (Smith-Hurd Ann.St.Ill. c. 32, § 157.34 note, Cahill's Rev.Stat.1931, c. 32), provides that "At such annual meeting, and at each annual meeting thereafter, the stockholders shall, except as hereinafter provided, elect directors for a term of one year." Further sections provide in substance that each such stockholder shall have the right to vote in person or by proxy according to the number of shares of stock owned and to cumulate such shares.

These provisions, as interpreted by the Supreme Court of Illinois, prohibit an Illinois corporation from depriving stockholders of the right to vote for directors. An Illinois statute authorizing the directors of a corporation to fill vacancies among the directors was held in People ex rel. Weber v. Cohn, 339 Ill. 121, 171 N.E. 159, to be unconstitutional. People ex rel. Watseka Telephone Co. v. Emmerson, 302 Ill. 300, 134 N.E. 707, 21 A.L.R. 636, declared that a corporation cannot deprive preferred stockholders of the constitutional right to vote for directors. In Luthy v. Ream, 270 Ill. 170, 110 N.E. 373, Ann.Cas.1917B, 368, the court decided that stockholders cannot be deprived, nor can they deprive themselves, of the voting power. Hall v. Woods, 325 Ill. 114, 156 N.E. 258, declared that any provision of a statute or by-law having the effect of depriving a stockholder of the right to vote for directors, is unconstitutional.

█ Petitioners urge that the state law does not control in federal tax cases except when the express language or necessary implications of the taxing act make its operation dependent upon state law. Burnet, Commissioner, v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199. The invoking of. this rule does not aid petitioners. That Congress, in the exercise of its sovereign power to tax, could have enacted a definition of nonvoting stock binding upon Illinois corporations is indicated in Burk-Waggoner Oil Ass'n v. Hopkins, Collector, 269 U.S. 110, 46 S.Ct. 48, 70 L.Ed. 183. However, Congress made no such definition in section 141 (d) of the Revenue Act of 1928. Therefore, as the corporation is the creature of the State of Illinois, we look to Illinois law to determine the nature of this stock. The operation of this federal taxing act, by necessary implication, is dependent upon the law of Illinois. Commissioner v. Jones, 62 F.(2d) 496 (C.C.A.6). This conclusion is based upon the federal decisions as to the control of state corporations by the state.' It is competent for the courts of Illinois to construe the laws of the state and decide what powers a corporation derives under them. Fifth Avenue Coach Co. v. City of New York, 221 U.S. 467, 481, 31 S.Ct. 709, 55 L.Ed. 815.

█ Not only under state decisions, but also under federal decisions, the sovereignty which determines the existence or non-existence of power in a state corporation is the state. New York Life Ins. Co. v. Cravens, 178 U.S. 389, 397, 20 S.Ct. 962, 44 L.Ed. 1116; Rochester Ry. Co. v. City of Rochester, 205 U.S. 236, 254, 27 S.Ct. 469, 51 L.Ed. 784; Interstate Consolidated Street Ry. Co. v. Commonwealth of Massachusetts, 207 U.S. 79, 28 S.Ct. 26, 52 L.Ed. 111, 12 Ann.Cas. 555; International & Great Northern Ry. Co. v. Anderson County, 246 U.S. 424, 433, 38 S.Ct. 370, 62 L.Ed. 807. A corporation is a mere creature of the law, and possesses only the powers conferred by the statute creating it and those necessarily implied. Huntington v. National

974

.Savings Bank, 96 U.S. 388, 24 L.Ed. 777; Waters-Pierce Oil Co. v. Texas, 177 U.S. 28, 20 S.Ct. 518, 44 L.Ed. 657. The granting of a corporate right or privilege rests entirely within the discretion of the state, and when granted may be accompanied by such conditions as the Legislature may judge most befitting to its interests and policy. Home Ins. Co. v. New York State, 134 U.S. 594, 600, 10 S.Ct. 593, 33 L.Ed. 1025; Horn Silver Mining Co. v. New .York State, 143 U.S. 305, 312, 313, 12 S.Ct. 403, 36 L.Ed. 164; Louisville & Nashville Rd. Co. v. Kentucky, 183 U.S. 503, 512, 22 S.Ct. 95, 46 L.Ed. 298; Farmers' Irrigation Dist. v. State of Nebraska ex rel. O'Shea, 244 U.S.· 325, 331, 37 S.Ct. 630, 61 L.Ed. 1168; Prudential Ins. Co. of America v. Cheek, 259 U.S. 530, 536, 42 S.Ct. 516, 66 L.Ed. 1044, 27 A.L.R. 27. The federal courts apply these rules as to state corporations with particular force when the power claimed or exercised by the state corporation constitutes a positive violation of state law. Louisville & Nashville Rd. Co., supra; Equitable Life Assur. Soc. v. Clements (Pettus), 140 U.S. 226, 233, 11 S.Ct. 822, 35 L.Ed. 497. The power claimed here by the petitioners constitutes a positive violation of state law.

Petitioners also urge that while state rules of property are followed by federal courts in interpreting federal statutes, state statutes and decisions regarding matters of public policy are not decisive in determining the application of a federal statute. The federal decisions do not support this contention, where, as here, the federal statute is silent upon the precise point in controversy. Thus in United States v. Cambridge Loan & Building Co., 278 U.S. 55, 49 S.Ct. 39, 73 L.Ed. 180, the Supreme Court affirmed a judgment for taxes claimed to have been paid under duress. The applicable federal statutes exempted building and loan associations, but did not define them. The Supreme Court held that as the respondent, under Ohio statutes, was recognized as a building and loan association, the exemption should be applied in its favor. In Commissioner v. Ogden, 62 F.(2d) 334 (C.C.A.1), a federal revenue act exempted state officers. The court applied the .statutes of Massachusetts in determining that an auditor was such an officer. In Colston v. Burnet, Commissioner, 61 App.D.C. 192, 59 F.(2d) 867, a federal taxing act was involved. · The petitioner claimed that he had made a contract under which he had paid his wife $20,000.00 and that this sum was a deductible loss. The court held that since the transaction occurred in Ohio, the laws of that state governed, and that the payment made under a contract invalid in Ohio was not deductible. See, also, Powers v. Commissioner, 68 F.(2d) 634 (C.C.A.1). None of these decisions involve a rule of property. Every one of them arose under federal statute, and yet in each of them the court gave to an undefined term or phrase of doubtful meaning therein the same interpretation as was given it in the state law.

This corporation, formed under Illinois law, could not assume to itself powers forbidden to it under the constitution and statutes of Illinois by a mere declaration in its articles of incorporation that it possessed them. Oregon Ry. & Navigation Co. v. Oregonian Ry. Co., Ltd., 130 U.S. 1, 25, 9 S.Ct. 409, 32 L.Ed. 837; International & Great Northern Ry. Co. v. Anderson County, supra, 246 U.S. 424, at page 433, 38 S.Ct. 370, 62 L.Ed. 807. Regarded as an attempted contract, the agreement with the preferred stockholders that their stock should have no voting rights was void.

■ The actual controversy here is whether these preferred shares fall into the category of voting or nonvoting stock. Since the Wurlitzer Grand Piano Company was organized in Illinois under general statute, the Illinois statutes and constitution were read into and became a part of its articles of incorporation. The company attempted to, but could not legally issue nonvoting stock. Inasmuch as ninety-five per cent. of the voting stock was not owned by the claimed parent organization, affiliation did not exist under the statute.

The orders of the Board of Tax Appeals are affirmed.

SIMONS, Circuit Judge (dissenting).

I am unable to concur in ,the decision. "Taxation, ·as it many· times has been said, is eminently practical." Tyler v. United States, 281 U.S. 497, 503, 50 S.Ct. 356, 359, 74 L.Ed. 991, 69 A.L.R. 758. The preferred stock of the affiliates was in terms and in fact "nonvoting." So viewed, the practical mind would have difficulty in classing the stock as "voting," even in the absence of statutory

definition, and notwithstanding rights existing under Illinois law, for the "Act of Congress has its own criteria, irrespective of local law." Weiss v. Wiener, 279 U.S. 333, 49 S.Ct. 337, 338, 73 L.Ed. 720. Granted that in a controversy between preferred stockholders and the corporation, or between classes of stockholders, voting rights reserved by the Illinois Constitution and statutes could be asserted, they are not here being pressed by the preferred stockholders, but for them by the Commissioner, and the corporation which represents the stockholders is in adversary position. Voting rights may be waived. So much the Commissioner concedes. Granted that a waiver would not be forever binding and might be withdrawn, we are not advised that this has been done.

The statutory test of an affiliate is its control by another corporation exercising 95 per cent. of its voting rights. No more practical, nor more arbitrary test can be suggested. It presents a question of fact to be decided by a realistic view of the actual situation with respect to control rather than by consideration of abstract legal rights, neither exercised nor asserted. The decision of the board should be reversed.